OPINION
{¶ 1} Appellant, Sharon Hawkins, appeals the August 19, 2002 judgment entry of the Portage County Court of Common Pleas, in which the trial court overruled her motion for a new trial and for judgment notwithstanding the verdict. Also, appellee, NGS American, Inc. Medical Insurance Company ("NGS"), filed a cross-appeal from the foregoing judgment entry, in which the trial court overruled its motion for prejudgment interest.
 {¶ 2} On April 14, 1998, appellant, a store manager for the Lyden Company ("Lyden") and its successor, True North Energy, LLC, ("True North") was involved in a three car "chain" rear-end collision caused by defendant Clint D. Anchors ("Anchors"). The driver of the other vehicle involved in the accident, Christina L. Willis ("Christina") and the passenger, Josephine Willis ("Josephine"), filed a complaint on August 30, 1999, against Anchors and appellant, alleging negligent operation of their motor vehicles in Case No. 99 CV 0732. Anchors filed an answer on September 29, 1999. On October 18, 1999, appellant filed an answer with a cross-claim against Anchors in Case No. 2000 CV 0058.
 {¶ 3} On January 20, 2000, appellant and her husband, Roger E. Hawkins ("Roger"), filed a complaint against Anchors and appellant's underinsured motorist carrier, Travelers Property Casualty Insurance Company ("Travelers"), alleging negligent operation of Anchors's motor vehicle. On February 18, 2000, Anchors filed an answer as well as a motion to consolidate, which was granted by the trial court on February 23, 2000.[1]
Travelers filed an answer to appellant's cross-claim on February 25, 2000.
 {¶ 4} On June 15, 2000, appellant filed a motion pursuant to Civ.R. 19(A) to include an additional party plaintiff, NGS, the administrator of Lyden's and True North's health plan, which was granted on June 20, 2000.
 {¶ 5} On February 22, 2001, appellant and Roger settled their claim with Anchors and his insurance carrier, Progressive, for the policy limits of $12,500, after obtaining consent from Travelers and agreeing to place $2,000 in escrow for any possible claims to be asserted by NGS, who had not filed any pleadings at that time. On April 27, 2001, NGS entered an appearance in the case. On May 29, 2001, NGS filed a cross-claim against appellant, attaching to their complaint the right of recovery agreement which was signed by appellant on February 25, 2000. On June 7, 2001, appellant filed her answer in which she admitted that there may be a subrogation to NGS or Lyden as well as alleged the defense of the "make-whole" doctrine.
 {¶ 6} On December 7, 2001, NGS served appellant with Ohio Health Choice Plan, which was restated on May 1, 2001, naming True North as the plan administrator and NGS as the plan supervisor. That plan was self-insured by Lyden and True North.
 {¶ 7} According to appellant's brief, on December 17, 2001, a mediation conference was held between appellant, Travelers, and NGS. Appellant settled her claim with Travelers for $115,000, however, no settlement was reached with NGS. On January 26, 2002, a settlement agreement and release was signed between appellant and Travelers, in which $23,433.92 was to be placed in escrow pending the dispute between appellant and NGS.
 {¶ 8} According to the March 1, 2002 judgment entry, the trial court concluded that appellant and Roger had settled all matters in dispute with Travelers and dismissed with prejudice all claims against Travelers.
 {¶ 9} A bench trial commenced on April 16, 2002. According to appellant's testimony, the force of the collision caused the back of her seat to break off, throwing her in the back seat of her vehicle. Because she was unable to get out of her car by herself after the accident, appellant was removed by emergency personnel and transported by ambulance to Robinson Memorial Hospital ("Robinson Memorial") in Ravenna, Ohio. Appellant was treated, x-rayed, medicated, and then released that same day.
 {¶ 10} On April 16, 1998, appellant was treated by her family physician, Dr. Edward Jastrzemski ("Dr. Jastrzemski"), as well as several times after this date. Dr. Jastrzemski eventually referred appellant to Dr. Tharp at Western Reserve Spine Pain, Inc., and her first visit commenced on November 11, 1999. Appellant underwent physical therapy, three epidural blocks, a nerve conduction study and several MRIs. On June 8, 2001, appellant ultimately underwent surgery with Dr. Tharp at Robinson Memorial in which she had a disk removed between C-5 and C-6 as well as a plate inserted in her neck.
 {¶ 11} As an employee of Lyden and True North, appellant received health insurance benefits from the administrator of its health plan, NGS. At trial, appellant testified that the bills paid by NGS arose from the April 14, 1998 accident.[2]
Based on the plan, each and every time that appellant made a claim for insurance benefits, that claim was subject to the defined terms of the plan. Pursuant to the provisions of the plan signed subsequent to the date of the accident as well as the plan of True North, in effect on May 1, 2001, the plan had an absolute right of recovery for any expenses that it pays "as a result of an illness or accident (such as a fall in a store) for which payment may be available through another source[.]" The right of recovery provision in the plan indicated that the plan may "ADVANCE benefit payment in order to assist [the insured] during [his or her] time of need." The plan further stated that "[a]cceptance of benefits from this plan automatically assigns to this plan any rights to recovery." However, there was no specific mention of uninsured/underinsured proceeds being subject to this subrogation provision.
 {¶ 12} The reimbursement provision in the Right of Recovery provision further provides:
 {¶ 13} "If a covered individual or their beneficiary or estate receives any payment or reimbursement from or on behalf of any other person or organization, any sum received (either by judgment or compromise) and whether or not designated as payment for medical expenses shall be applied first to reimburse the plan until the plan has been repaid in full.
 {¶ 14} "The plan shall have a lien upon any payments or reimbursements received by a covered individual due to settlement, judgment or otherwise (and whether or not designated as payment for medical expenses) until repayment to the plan has been made in full.
 {¶ 15} "This plan will, in all events, have the right to recover payment directly from a covered individual as well as have the right to make a claim to any responsible party or organization or bring a lawsuit against them in the coveredindividual's name in order to recover any paid benefits. This provision is intended to supersede the covered individual's
right to be `made whole' and intends to have a claim to any reimbursement whether received by a judgment, settlement or through some other source." (Emphasis sic.)
 {¶ 16} In addition, appellant also entered into a Right of Recovery Agreement with the plan on February 25, 2000, which provides that:
 {¶ 17} "If another person or organization is responsible to pay for my medical expenses under the [p]lan and the [p]lan has paid a part or all of my claim, then:
 {¶ 18} "a. Up to the amount paid by the [p]lan, the [p]lan shall have all the rights that I have against such other person or organization including the right to make a claim to such person or organization or bring a lawsuit against them in my name;
 {¶ 19} "b. If I receive any payment or reimbursement from or on behalf of such other person [or] organization, any sums I receive (either by judgment or compromise and whether or not designated as payment for medical expenses) shall be applied first to reimburse the [p]lan until the [p]lan has been repaid in full;
 {¶ 20} "c. The [p]lan shall have a lien upon any payments or reimbursements received by me due to settlement, judgment or otherwise (and whether or not designated as payment for medical expenses), until repayment to the [p]lan has been made in full."
 {¶ 21} Attorney Dennis R. Spirgen ("Attorney Spirgen") testified at trial that he was the attorney for Travelers during the case at issue. Based upon his experience, education, and familiarity with the instant matter and with appellant's injuries, Attorney Spirgen stated that in his opinion, appellant has not received full compensation for her injuries.[3]
 {¶ 22} There was no contrary testimony.
 {¶ 23} According to the July 11, 2002 judgment entry, the trial court allowed Lyden and True North fourteen days to either ratify or disaffirm its interest in this case. Based on that entry, if Lyden and True North ratified, then judgment would be granted for Lyden, True North, and NGS for $23,433.92. On July 22, 2002, Lyden and True North filed a ratification, which was not signed by True North Energy but by True North Management, LLC. On July 25, 2002, NGS filed a motion for prejudgment interest. Also on July 25, 2002, appellant filed a Civ.R. 50(B) motion for judgment notwithstanding the verdict and/or a new trial pursuant to Civ.R. 59. A hearing was held on August 19, 2002.
 {¶ 24} Pursuant to the August 19, 2002 judgment entry, the trial court overruled appellant's motion for a new trial and/or judgment notwithstanding the verdict. Also, the trial court overruled NGS's motion for prejudgment interest. Appellant timely filed the instant appeal and raises the following assignments of error:[4]
 {¶ 25} "[1.] Where a party attaches to their cross claim an exhibit purporting to be the contract they rely on to prove their claim, the party cannot then substitute a different contract at the trial without leave of Court and reasonable notice to opposing counsel.
 {¶ 26} "[2.] Unless the terms of the subrogation agreement specifically provide for subrogation from proceeds from an underinsured motorists policy the health insurer has no claim for reimbursement as the contract is strictly construed against the drafter.
 {¶ 27} "[3.] A claim for subrogation must be brought by the real party in interest and once said party has been put on notice, failure to assert their claim is prejudicial to the insured and their claim must fail. Said party or parties cannot be added as a party plaintiff at the conclusion of the trial.
 {¶ 28} "[4.] A health insurer that has paid medical benefits to its insured may not recover from its insured until the insured has received full compensation. An insured who escrows the amount claimed by their health carrier as subrogated has not prejudiced their health carrier by releasing the tortfeasor and their underinsured motorists carrier.
 {¶ 29} "[5.] The trial court erred by not granting [appellant's] motion for judgment not on the verdict and a new trial.
 {¶ 30} "[6.] The trial court erred by not granting [appellant's] motion for a directed verdict."
 {¶ 31} Appellees, NGS, True North, and Lyden, filed a cross-appeal and raise the following assignment of error:
 {¶ 32} "* * * [T]he [t]rial [c]ourt [e]rr[ed] by [n]ot [a]warding * * * [NGS], together with [True North] and [Lyden], [p]rejudgment [i]nterest on their [c]ross-[c]laim [a]gainst [appellant.]"
 {¶ 33} Because appellant's first, second, and sixth assignments of error are interrelated, they will be addressed in a consolidated fashion. Appellant argues that since NGS attached to their cross-claim an exhibit purporting to be the contract they relied on to prove their claim, they cannot then substitute a different contract at the trial without leave of court and reasonable notice to opposing counsel. Appellant further alleges that unless the terms of the subrogation agreement specifically provide for subrogation from proceeds from an underinsured motorist's policy, the health insurer has no claim for reimbursement as the contract is strictly construed against the drafter. In this sense, appellant contends that the right of recovery document attached to NGS's cross-claim is the contract to which they are bound. As such, appellant stresses that the trial court erred by not granting her motion for a directed verdict.
 {¶ 34} The court in Mantua Mfg. Co. v. Commerce ExchangeBank (1996), 75 Ohio St.3d 1, 4, stated:
 {¶ 35} "The standards applied to motions for directed verdict and motions for judgment notwithstanding the verdict are identical. Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 137, * * * citing Ayers v. Woodard (1957), 166 Ohio St. 138, * * * paragraph one of the syllabus. Specifically, either motion should be granted when `the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' Civ.R. 50(A)(4)." (Parallel citations omitted.)
 {¶ 36} In the case at bar, the language of the foregoing reimbursement provision in the original plan, as well as the right of recovery agreement that appellant entered into on February 25, 2000, are not ambiguous and clearly state that a lien is established for medical payments. As previously indicated, the language in both the original plan and the right of recovery agreement on this point are identical. Also, NGS's cross-claim against appellant states that NGS, by and through Lyden, had subrogation rights that have not been satisfied and that appellant breached the right of recovery agreement.
 {¶ 37} While we agree that the trial court was restricted to only examine the right of recovery agreement, its logic would have led it to the same conclusion. As such, appellant has failed to show any prejudice. Pursuant to Mantua, supra, construing the evidence most strongly in favor of appellee, reasonable minds could come to different conclusions. Therefore, the trial court did not err by not granting appellant's motion for a directed verdict. Thus, appellant's first, second, and sixth assignments of error are without merit.
 {¶ 38} In her third assignment of error, appellant contends that a claim for subrogation must be brought by the real party in interest and once that party has been put on notice, failure to assert their claim is prejudicial to the insured and their claim must fail. Also, appellant stresses that a real party in interest cannot be added as a party plaintiff at the conclusion of the trial. According to appellant, it was error for the trial court to allow two "non-parties," Lyden and True North, the opportunity to file a ratification.
 {¶ 39} Civ.R. 17(A) provides, in pertinent part, that: "* * * [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."
 {¶ 40} This court stated in Dick v. BJ Motors (Feb. 28, 1986), 11th Dist. No. 3573, 1986 Ohio App. LEXIS 5846, at 3, that: "the trial court may at any time before, during, or after trial and before final judgment permit substitution of the parties. 41 Ohio Jurisprudence 2d (1960) 505, Parties, Section 41."
 {¶ 41} We must note that appellant did not raise the foregoing issue pursuant to a Civ.R. 12(B)(7) motion, but rather as an affirmative defense. Nevertheless, based on Civ.R. 17(A), the trial court properly determined that the real party in interest is Lyden and its successor, True North. In this sense, the trial court did not err by adding Lyden and True North as party plaintiffs or by giving them the chance to ratify or disaffirm their interest in this case since the evidence on this issue would not have varied regardless of whether or not Lyden and True North would have been parties at the time of trial. Therefore, no prejudice occurred as a result. Thus, appellant's third assignment of error is without merit.
 {¶ 42} In her fourth assignment of error, appellant argues that a health insurer that has paid medical benefits to its insured may not recover from its insured until the insured has received full compensation. Also, appellant stresses that an insured who escrows the amount claimed by their health carrier as subrogated has not prejudiced their health carrier by releasing the tortfeasor and their underinsured motorist carrier.
 {¶ 43} In Erie Ins. Co. v. Kaltenbach (1998),130 Ohio App.3d 542, 546, the court stated that:
 {¶ 44} "The right of an insurer to be subrogated to the rights of the insured arises either from the right of conventional subrogation, that is subrogation by agreement between the parties, or equitable subrogation by operation of law. Blue Cross Blue Shield Mut. of Ohio v. Hrenko (1995),72 Ohio St.3d 120 * * *; Travelers Indemnity Co. v. Brooks (1977),60 Ohio App.2d 37 * * *. Conventional subrogation is `premised on the contractual obligations of the parties, either express or implied.' Hrenko at 121. Contractual subrogation clauses in an insurance policy are controlled by contract principles, including those of interpretation of the contract language. NationwideMut. Fire Ins. Co. v. Sonitrol, Inc. of Cleveland (1996),109 Ohio App.3d 474, 482 * * *. Words in an insurance policy `must be given their plain and ordinary meaning.' Hrenko at 122. If a policy is ambiguous, the language will be liberally construed in favor of the party insured under it. Id." (Parallel citations omitted.)
 {¶ 45} Equitable subrogation, on the other hand, "arises when there is no agreement creating a contractual obligation to subrogate." Tower City Title Agency v. Flaisman (Apr. 20, 2001), 11th Dist. No. 2000-L-070, 2001 Ohio App. LEXIS 1837, at 5, citing Fed. Home Loan Mtge. Corp. v. Moore (Sept. 27, 1990), 10th Dist. No. 90AP-546, 1990 Ohio App. LEXIS 4263, at 2.
 {¶ 46} The court in Erie, supra, further stated that:
 {¶ 47} "`Where an insured has not interfered with an insurer's subrogation rights, the insurer may neither be reimbursed for payments nor seek setoff from the limits of its coverage until the insured has been fully compensated for his injuries.' James v. Michigan Mut. Ins. Co. (1985),18 Ohio St.3d 386, 388. * * *
 {¶ 48} "As well, the voluntary settlement by an insured of his claims against a tortfeasor, without proof to the contrary, is persuasive evidence of the value of the insured's `personal injury claim, and tends to prove that [the insured] (* * *) was fully compensated' for his injuries. Risner v. Erie Ins. Co.
(1993), 91 Ohio App.3d 695, 699 * * *." (Parallel citations omitted.)
 {¶ 49} "Pursuant to the terms of an insurance contract, a health insurer that has paid medical benefits to its insured and has been subrogated to the rights of its insured may recover from the insured after the insured receives full compensation by way of a settlement with the insured's uninsured motorist carrier."Hrenko, supra, at syllabus.
 {¶ 50} Although the decision in Hrenko appears to be primarily based on the broad public policy arguments we just discussed, neither the original plan nor the right of recovery agreement here contain specific references to uninsured/underinsured language as part of its subrogation rights.
 {¶ 51} Since Hrenko, a trend developed in Ohio wherein courts have held that the "make-whole" doctrine stands for the proposition that "`an insurer's subrogation interests will not be given priority where doing so will result in less than [a] full recovery to the insured.'" Northern Buckeye Edn. Council GroupHealth Benefits Plan v. Lawson (2003), 154 Ohio App.3d 659, 664, quoting Grine v. Payne (Mar. 23, 2001), 6th Dist. No. WD-00-044, 2001 Ohio App. LEXIS 1342. See, also, Central ReserveLife Ins. Co. v. Hartzell (Nov. 30, 1995), 5th Dist. No. 94AP120094, 1995 Ohio App. LEXIS 6027; Moellman v. Niehaus
(Feb. 5, 1999), 1st Dist. No. C-971113, 1999 Ohio App. LEXIS 300;Porter v. Tabern (Sept. 17, 1999), 2d Dist. No. 98-CA-26, 1999 Ohio App. LEXIS 4289; Johnson v. Progressive Ins. Co. (Dec. 23, 1999), 11th Dist. No. 98-L-102, 1999 Ohio App. LEXIS 6258.
 {¶ 52} In the case sub judice, the trial court stated in its July 11, 2002 judgment entry that: "[appellant] settled this case with both the tortfeasor and her underinsured motorist company and as a result she granted a full release for all claims against those companies.
 {¶ 53} "The settlement agreement has been admitted * * *. As such, [pursuant to Erie, supra,] [NGS's] right of subrogation as to those individuals would be defeated, therefore, the `make whole' doctrine is not applicable."
 {¶ 54} We agree.
 {¶ 55} As previously addressed, both the language in the plan, as well as in the February 25, 2000 right of recovery agreement, are not ambiguous. The plan specifically indicates that once a payment is made, the right of recovery is automatically assigned. The plan states that "any sum received * * * whether or not designated as payment for medical expenses shall be applied first to reimburse the plan until the plan has been repaid in full." Also, the plan indicates that it "shall have a lien upon any payments or reimbursements received by a covered individual due to settlement, judgment or otherwise * * * until repayment to the plan has been made in full." Furthermore, the plan stresses that the right of recovery is "intended to supersede the covered individual's right to be `made whole' * * *."
 {¶ 56} Although Attorney Spirgen testified that he believed that appellant was not fully compensated, the evidence shows that as a condition of receiving a total of $127,500, appellant voluntarily settled with Anchors and Travelers, releasing them from any and all further liability. Based on Erie, supra, the voluntary settlement by appellant tends to prove that appellant was fully compensated for her injuries to the extent that she received the maximum limit available from Anchors's insurance carrier, Progressive, as well as $115,000 from her settlement with Travelers. Therefore, appellant impaired NGS's right to subrogation. The fact that money was placed in escrow does not alter the conclusion that NGS's subrogation rights were impaired. See, e.g., Martin v. Dillow (1994), 93 Ohio App.3d 108. As such, pursuant to Erie, the "make-whole" doctrine is inapplicable. Thus, appellant's fourth assignment of error is without merit.
 {¶ 57} In her fifth assignment of error, appellant alleges that the trial court erred by not granting her motion for a new trial and/or judgment notwithstanding the verdict.
 {¶ 58} Pursuant to App.R. 16(A)(7), an appellant is required to include in his appellate brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."
 {¶ 59} In Village of S. Russell v. Upchurch, 11th Dist. Nos. 2001-G-2395 and 2001-G-2396, 2003-Ohio-2099, at ¶ 10, this court stated that:
 {¶ 60} "An appellant `bears the burden of affirmatively demonstrating error on appeal.' Concord Twp. Trustees v.Hazelwood Builders (Mar. 23, 2001), 11th Dist. No. 2000-L-040, 2001 Ohio App. LEXIS 1383. It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error. See Kremer v. Cox (1996),114 Ohio App.3d 41, 60 * * *. Furthermore, if an argument exists that can support appellant's assignments of error, `it is not this court's duty to root it out.' Harris v. Nome, 9th Dist. No. 21071, 2002-Ohio-6994, * * *." (Parallel citations omitted.)
 {¶ 61} In the instant matter, with respect to appellant's fifth assignment, her brief only provides the following: "[a]ll of the aforesaid issues were discussed in [appellant's] motion for judgment not on the verdict and new trial, and were overruled. [Appellant] would incorporate all prior arguments." As such, appellant has failed to support her assertions with arguments, and has failed to set forth a single, legal authority to support her contention that the trial court erred by not granting her motion for a new trial and/or for judgment notwithstanding the verdict. Thus, appellant clearly did not follow the requirements of App.R. 16(A)(7). Therefore, appellant's fifth assignment of error is overruled.
 {¶ 62} Turning to appellees' assignment of error on cross-appeal, they allege that the trial court erred by not awarding them prejudgment interest on their cross-claim against appellant. Appellees argue that NGS's claim was not based upon a tort claim, but rather on contract. As such, appellees stress that prejudgment interest must be awarded. Also, appellees contend that the real party in interest issue does not obviate the need for prejudgment interest.
 {¶ 63} In Brittain v. Jelenic, 11th Dist. No. 2001-L-099, 2002-Ohio-2974, at ¶ 8, this court stated that: "[t]he award of prejudgment interest with respect to claims arising out of breach of contract is governed by R.C. 1343.03(A). Galmish v. Cicchini
(2000), 90 Ohio St.3d 22, 33. `Under R.C. 1343.03(A), a trial court does not have discretion in awarding prejudgment interest.'Slack v. Cropper (2001), 143 Ohio App.3d 74, 85 * * *." (Parallel citations omitted.)
 {¶ 64} R.C. 1343.03(A) provides that: "* * * [w]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."
 {¶ 65} This court further stated in Brittain, supra, at ¶ 11-12, that: "[w]hile the statute does not provide explicitly for prejudgment interest on a civil contract, the Supreme Court of Ohio has held that such a remedy is available under R.C.1343.03(A). The Court has held that `in determining whether to award prejudgment interest pursuant to (* * *) [R.C. 1343.03(A)], a court need only ask one question: Has the aggrieved party been fully compensated?' Royal Elec. Constr. Corp. v. Ohio StateUniv. (1995), 73 Ohio St.3d 110, 116.
 {¶ 66} "`In order to make the aggrieved party whole, the party is compensated "for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court."' (Emphasis sic.) Mayer v. Medancic, 2001-Ohio-8784, 2001 Ohio App. LEXIS 5863, at 10-11, citing [Royal Elec.,] supra, at paragraph one of the syllabus." (Parallel citations omitted.)
 {¶ 67} In the case at bar, NGS's cross-claim was based on a breach of contract. NGS specifically alleged that appellant breached the Right of Recovery Agreement with NGS, the third-party administrator for Lyden's health insurance plan. As such, NGS contended that it had been damaged in the full amount of its subrogated rights.
 {¶ 68} Insurance subrogation claims arise under contract. SeeEssad v. Cincinnati Cas. Co. (Apr. 16, 2002), 7th Dist. No. 00 CA 199, 2002 Ohio App. LEXIS 7285; Foremost Ins. Co. v. Walters
(1975), 45 Ohio Misc. 51. According to Royal Elec., supra, appellees have not been fully compensated, and the "real party in interest" issue does not preclude the need for prejudgment interest. Therefore, pursuant to R.C. 1343.03(A), prejudgment interest must be awarded to appellees.
 {¶ 69} For the foregoing reasons, appellant's assignments of error are not well-taken, and appellees' assignment of error on cross-appeal is well-taken. Therefore, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded, so that the trial court can calculate the amount of prejudgment interest due appellees from the January 26, 2002 settlement.
Grendell, J., concurs.
[1] The trial court ordered that Case No. 2000 CV 0058 be consolidated into Case No. 99 CV 0732.
[2] We must note that NGS attached the February 25, 2000 right of recovery agreement with the plan to its complaint, but at the trial, appellee's representative introduced a summary of the May 1, 2001 plan. However, the language at issue in both the original plan and the right of recovery agreement are identical.
[3] We must note that appellant received the maximum amount of $12,500 from Progressive, Anchors's insurance carrier, as well as $115,000 from the settlement with her underinsured motorist company, Travelers.
[4] On September 25, 2002, pursuant to a court order, appellant posted a $24,000 supersedeas bond pending this appeal. On October 10, 2002, this court, sua sponte, consolidated the cases for all purposes. This court further ordered that appellees/cross-appellants' notices of appeal will be treated as cross-appeals in these consolidated appeals.