OPINION
{¶ 1} Appellants, Robert Gibbs, Hazelwood Builders, Inc., and R.E.G., Inc. appeal the jury verdict of the Lake County Court of Common Pleas awarding appellees, Dean and Diane Secrest, $235,000 in combined compensatory and punitive damages as well as reasonable attorneys fees. The facts relevant to the current appeal are as follows:
 {¶ 2} In the 1980s, Hazelwood Builders, Inc., purchased land in Concord Township, Lake County, Ohio on which an existing home and barn were located. Hazelwood renovated and sold the home. The remainder of the property was subdivided into four distinct parcels (Parcels 1, 3, 4, and 5). Hazelwood constructed three Cape Cod-style homes on three of the newly divided parcels (Parcels 1, 3, and 4). Hazelwood kept the barn property, Parcel 5, titled in its name.
 {¶ 3} As they were not built on an existing highway, the newly subdivided properties had no individual means of ingress or egress. Accordingly, Hazelwood created a driveway easement accessing Johnnycake Ridge Road/Route 84. The easement partially intersected land located on Parcels 3 and 4; this affected property not only included portions of the driveway on Parcels 3 and 4, but also portions of their front yard. Upon purchase of the respective property, owners of Parcels 1, 3, and 4 were required to sign a Declaration of Easement which gave all parties, including Hazelwood, the right to use the driveway easement as a means of ingress and egress. The Declaration required the owners of Parcels 1, 3, and 4 to "perform all maintenance, repair, replacement and or [sic] other curative action required, to include snow removal, all cost and expenses incurred for said maintenance and repair * * *."
 {¶ 4} In May of 1991, appellees negotiated the purchase of the home on Parcel 4. Parcel 4 was contiguous to Parcel 5, the property owned by Hazelwood. In order to comply with the planned development of Parcel 5, Hazelwood reserved, for its exclusive use, a certain portion of the property on Parcel 4. An instrument was prepared reflecting this reservation containing language making the property expressly subject to both Hazelwood's exclusive right to use of this property as well as the easement referred to above.
 {¶ 5} Appellees testified their initial purchase agreement did not refer to the driveway easement and exclusive use right. When Diane Taylor, Hazelwood's real estate agent ultimately apprized them of the easement, appellees purportedly sought a modification of the easement's terms: appellees wanted Hazelwood to share in the maintenance expenses and desired express assurances that the property in their front yard would remain unaffected by the easement. Appellees alleged they signed an instrument reflecting their desires and were assured by Taylor it would be signed by agents of Hazelwood and properly filed. At trial, Taylor denied discussing this matter with appellees and indicated she never made any assurances regarding the modification of the easement. A modified easement was never filed and the sale proceeded without incident. In 1992, appellees received the deed to the property and did not object to its contents.[1]
 {¶ 6} At trial, appellees submitted numerous photographic exhibits showing how, as early as July of 1992, Hazelwood had left equipment and other building materials on the easement property. The photographic exhibits catalogued a continuing pattern of what appellees believed was an abuse of the driveway easement by Hazelwood and its agents. The great majority of the alleged abuse occurred between 1995-1999: Appellees submitted multiple photographic and videotape exhibits demonstrating how Hazelwood parked construction equipment, inter alia, on the easement property occasionally blocked appellee's means of ingress and egress to and from their home.
 {¶ 7} While the equipment would come and go, appellees presented evidence of how the property was physically damaged by the equipment. The evidence also demonstrated the various inconveniences the parked equipment presented by virtue of its positioning. The majority of the interference occurred on the driveway easement property; however, appellees also presented evidence of how, on one occasion, Mr. Gibbs placed and large concrete planters on a portion of appellees front lawn (not part of the driveway easement) and failed to remove them for nearly a month despite appellees' entreaties. The planters remained on wooden skids throughout this time thus reflecting appellants' desire to merely "store" or "warehouse" the objects for future use. Further, appellees alleged from 1995-1999, large construction equipment (viz. a backhoe, a "frontloader" attachment, a large air compressor, and a flatbed truck) were parked on the driveway easement property for some 304 non-consecutive days. The equipment was finally removed in 1999 after appellees filed the instant suit.
 {¶ 8} In addition to the foregoing problems, on May 31, 1997, appellees received an invoice from R.E.G. Consulting, a division of appellant R.E.G., Inc., for professional services rendered. The invoice indicated appellees owed R.E.G. Consulting $6,000 for consultation regarding the "Secrest/Hazelwood Animal Husbandry Barn Project." Appellees testified they had neither sought nor received the services described in the invoice. However, appellants subsequently commenced construction of a large, 3,600 square foot structure located upon the strip of appellees' land subject to Hazelwood's exclusive use right. Hazelwood intended the building to be used as an "animal husbandry" building. Appellees were able to enjoin the construction of this building as a portion of the structure encroached upon the frontage requirements set forth in the Concord Township Zoning Regulations. As of trial, the building had not been completed and remains in the same condition as when construction began in 1998.
 {¶ 9} Next, on June 5, 1998, appellants, through Robert Gibbs, filed a mechanics' lien in the amount of $50,000 on the portion of appellees' property subject to appellants exclusive right to use. At the time the lien was filed, Hazelwood, Inc., had filed for bankruptcy. As Hazelwood could not pay for the labor and materials furnished to commence the building of the animal husbandry structure, appellee R.E.G., Inc., sought payment from the landowners, appellees. Appellant Gibbs failed to give appellees any notice of the lien. Although the lien was filed against the property subject to the exclusive use right, Gibbs testified he was aware the lien could affect appellees' entire property. When appellees tried to refinance their mortgage in 1999, they were denied as a result of the lien. The instant suit followed.
 {¶ 10} Appellees originally filed suit in 1997 for damages and injunctive relief, see Case No. 97 CV 002293. However, appellees dismissed the case due to alleged inabilities to perfect service on one or more of the defendants. The case was re-filed in November of 1999. After a four day jury trial, the trial court ruled that the mechanics' lien filed by appellant R.E.G., inc. was invalid; the court instructed the jury on claims for trespass, fraudulent filing of a mechanics' lien, and piercing the corporate veil. A unanimous jury returned a verdict in appellees' favor on all claims; the verdict acted to disregard the corporate forms of Hazelwood Builders, Inc. and R.E.G., Inc. thereby holding appellant Robert Gibbs personally liable for all the claims. The jury awarded appellees compensatory damages in the amount of $85,000 and punitive damages in the amount of $150,000. The jury also found that reasonable attorney fees should be awarded to appellees; after a separate hearing on this issue, the trial court awarded $25,000 for such fees.
 {¶ 11} Appellants now appeal and assign the following errors for our review:
 {¶ 12} "[1.] The verdict resulted from the misconduct of plaintiffs' [sic] who intentionally incited the passion and prejudice of the jury with inadmissible evidence and improper commentary regarding appellants.
 {¶ 13} "[2.] The verdict was against the weight of the evidence.
 {¶ 14} "[3.] The court committed reversible error in denying appellants' motion for a new trial or for judgment notwithstanding the verdict.
 {¶ 15} "[4.] The judgment for plaintiffs' attorney fees was unwarranted, excessive and not supported by the evidence."
 {¶ 16} In order to develop a context for discussion of appellants' first assignment of error, a basic understanding of the evidentiary picture is necessary. We shall therefore address appellants' second assignment of error first.
 {¶ 17} In their second assignment of error, appellants contend the jury's verdict was against the weight of the evidence. When reviewing a jury verdict which is purportedly contrary to the weight of the evidence, a reviewing court is guided by a presumption that the findings of the jury were indeed correct. Seasons Coal Co., Inc. v. Cleveland
(1984), 10 Ohio St.3d 77, 79-80. Judgments based on some competent, credible evidence going to all the essential elements of the case will not be reversed by an appellate court as being against the weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus.
 {¶ 18} Here, the jury found defendants Robert Gibbs, Hazelwood Builders, Inc., and R.E.G., Inc., liable for trespass and fraudulent filing of a mechanics lien. Further, the jury determined the evidence was sufficient to disregard the corporate forms and imputed personal liability on all claims to defendant Robert Gibbs. After advising the jury that the mechanics' lien was invalid as a matter of law, the trial court charged the jury as follows:
 {¶ 19} "Fraud is a civil wrong. It is a deception practiced with a view to gaining an unlawful or unfair advantage. It is a false representation of fact, whether by words, conduct, or concealment which misleads and is intended to mislead another.
 {¶ 20} "Plaintiffs must prove by the greater weight of the evidence each of the following elements:
 {¶ 21} "(a) A false representation of fact was made with knowledge of its falsity or with utter disregard and recklessness about its falsity that knowledge may be found;
 {¶ 22} "(b) the representation and/or concealment was material;
 {¶ 23} "(c) The representation or concealment was made with the intent of misleading someone;
 {¶ 24} "(d) The Plaintiffs were injured and the injury was directly caused by Defendants' deception or false representation."
 {¶ 25} "* * *
 {¶ 26} "Now, the Plaintiff [sic] also claims that the Defendants have trespassed on certain land causing damages to the Plaintiff. To establish this claim the Plaintiff must prove by the greater weight of the evidence that the — that the Plaintiff either was in possession or had a right to use the land and that the Defendant entered upon the land without permission from the Plaintiffs or used an easement in an reasonable [sic] fashion."
 {¶ 27} "* * *
 {¶ 28} "The corporate veil may be pierced and Robert Gibbs held liable for wrongs committed by the corporations when:
 {¶ 29} "(1) Control over the corporation by Robert Gibbs was so complete that the corporation has no separate mind, will or existence of their own; and
 {¶ 30} "(2) Control over the corporation by Robert Gibbs was exercised to commit fraud or an illegal action against the person seeking to disregard the corporate entity, in this case the Plaintiffs, Dean and Diane Secrest; and
 {¶ 31} (3) Injury or unjust loss resulted to the Plaintiffs from that control or wrong."
 {¶ 32} Here, appellees presented competent, credible evidence going to each element of the allegations set forth above. With respect to the fraud charge, appellees offered evidence that appellant Gibbs filed an invalid mechanics' lien on their property. Evidence also showed that Mr. Gibbs neither spoke with appellees nor gave them notice that R.E.G., Inc., through him, filed the mechanics' lien. Mr. Gibbs acknowledged that the lien "could" affect appellees' entire property parcel and thereby encumber their credit and ability to refinance their property. Finally the evidence demonstrated that appellees' financial institution was misled by the invalid mechanics' lien and appellees were consequently unable to refinance their property. The jury's verdict regarding the fraudulent filing of a mechanics' lien is not against the weight of the evidence.
 {¶ 33} With respect to the trespass charge, appellees presented ample evidence that Hazelwood Builders, Inc., without appellees' permission, allowed their equipment to encroach upon appellees' property that was not part of the easement.[2] Appellees additionally demonstrated that the easement gave appellants the right to use the property as a means of ingress and egress. Testimony indicated that Hazelwood's equipment was parked on the easement for more than 300 non-consecutive days, including a period during which a backhoe owned by Hazelwood blocked appellees' driveway. The evidence demonstrated appellants' use of the easement property was inconsistent with the filed document giving appellants the right to a "Driveway Easement" as a means of ingress and egress. Moreover, appellees demonstrated, via photographs, that their property was damaged by the equipment; Mr. Secrest also testified that appellees were unable to enter and exit their own driveway without driving into their front lawn due to the positioning of Hazelwood's large, ungainly equipment. The jury's verdict regarding appellants' civil trespasses is not against the weight of the evidence.
 {¶ 34} Finally, with respect to piercing the corporate veil, the jury heard evidence that Mr. Gibbs exercised significant if not absolute control over the general functions of the corporations; moreover, testimony indicated that Mr. Gibbs could draw on the cash of the corporations whenever he "needed." As indicated previously in our analysis, Mr. Gibbs used both Hazelwood and R.E.G., Inc. to file an invalid mechanics' lien against appellees' property which injured appellees to the extent they were unable to refinance their property. The jury had sufficient, credible evidence before it to pierce the corporate veil and therefore its verdict on this issue is not against the weight of the evidence.
 {¶ 35} That said, appellants argue that the verdicts were against the evidential weight because appellees failed to prove any economic damages. The jury awarded appellees $85,000 in compensatory damages. We believe appellee set forth adequate evidence in support of the jury's determination.
 {¶ 36} We first acknowledge that appellees did not put forth evidence of the monetary damage they sustained as a result of appellants' conduct. That is not to say appellees did not attempt to submit such evidence: The trial court repeatedly barred appellees' attempts to submit evidence regarding the "difference in value" damages issuing from appellants' actions. Each attempt was met with an objection by appellants' trial counsel which was sustained by the court. The most salient exchange occurred near the end of trial:
 {¶ 37} "Q. Regarding damage that was done to our property for which we are making a claim against the Defendants?
 {¶ 38} "[Appellants' counsel]: Objection, Your Honor.
 {¶ 39} "The Court: Sustained.
 {¶ 40} "* * *
 {¶ 41} "Q. What is the total of your monetary out-of-pocket losses since the inception of this lawsuit to the last date entered in on that exhibit?
 {¶ 42} "[Appellants' counsel]: Objection.
 {¶ 43} "The Court: Sustained.
 {¶ 44} "Q. Give us a dollar amount for your out-of-pocket losses as reflected in your exhibit."
 {¶ 45} "[Appellants' Cousel]: Objection
 {¶ 46} "The Court: Sustained.
 {¶ 47} "* * *
 {¶ 48} "Q. Do you have an opinion on the devaluation of your property and what the devaluation is a result of —
 {¶ 49} "A. Yes, I do.
 {¶ 50} "Q. — as a homeowner?
 {¶ 51} "A. Yes, I do.
 {¶ 52} "Q. Reflecting on some of the evidence before the jury, hard evidence, photo exhibits, videotapes, does that impact your properties value in your opinion as a homeowner?
 {¶ 53} "[Appellants' Counsel]: Objection, Your Honor.
 {¶ 54} "The Court: Yes, sustained.
 {¶ 55} "* * *
 {¶ 56} "Q. Do you believe your property value has been diminished?
 {¶ 57} "[Appellants' Counsel]: Objection, Your Honor.
 {¶ 58} "The Court: Sustained.
 {¶ 59} "Q. Do you have an opinion of your property's worth as a homeowner as it exits today?
 {¶ 60} "[Appellants' Counsel]: Objection, Your Honor.
 {¶ 61} "The Court: Sustained. Asked and answered. Fair market value is it. I'll tell the jury at the end of the case how they can get to the damages if we get there."
 {¶ 62} "Q. Dean, you have a claim in this case for loss of use and enjoyment of your home. Can you put a dollar figure — describe what your loss has been to the jury, intangible loss of use and enjoyment, not something you have a receipt for?
 {¶ 63} "[Appellants' Counsel]: Objection, Your Honor.
 {¶ 64} "The Court: Sustained.
 {¶ 65} "* * *
 {¶ 66} "Q. Can you state your claims to the jury in this case as far as your monetary claims for damages against the Defendants?
 {¶ 67} "[Appellants' Counsel]: Objection, Your Honor.
 {¶ 68} "The Court: Sustained.
 {¶ 69} "Q. Do you believe you have incurred damages for the deprivation of the loss and the use of your home.
 {¶ 70} "[Appellants' Counsel]: Objection, Your Honor.
 {¶ 71} "The Court: Sustained. That's seven. Eight and you are out."
 {¶ 72} As the foregoing exchange indicates, appellees attempted to testify to both the economic and non-economic damages they suffered as a result of appellants' acts and/or omissions. However, appellants' counsel precluded the admission of this evidence with a barrage of sustained objections. Now, appellants tortuously seek to assign as error the absence of evidence which was excluded as a result of their own trial methods and designs. Appellants' argument is both misplaced and improper.
 {¶ 73} "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." State ex rel. Bitter v. Missig,72 Ohio St.3d 249, 254, 1995-Ohio-147. Since appellants prevented appellees from submitting evidence on economic (et al.) damages, they cannot now claim on appeal that appellees erred in failing to present this evidence. We therefore hold the absence of any evidence regarding damages, while problematic, was an error for which appellants were actively responsible. Thus, pursuant to the doctrine of invited-error, appellants are precluded from challenging this issue.
 {¶ 74} In any event, the evidence heard by the jury demonstrated appellants engaged in a pattern of trespassory activity stretching over a period of years. The evidence also showed appellants' fraudulently filed an invalid lien encumbering appellees' entire property. From this evidence, the jury could grasp the physical damage as well as the fundamental inconveniences, both tangible and aesthetic, suffered by appellees. We believe the jury's verdict is not against the weight of the evidence and appellees offered adequate evidence of their right to recovery. Appellant's second assignment of error is without merit.
 {¶ 75} In their first assignment of error, appellants argue appellees' counsel made improper comments during both his opening statement and closing argument; appellants further contend counsel, throughout the trial, queried witnesses inappropriately and made multiple attempts to offer inadmissible evidence. Although their trial counsel inveterately objected to counsel's conduct and the great balance of these objections were sustained, appellants contend counsel's behavior roused passion in the jury thereby improperly prejudicing its verdict.
 {¶ 76} We first note that appellants fail to offer a specific argument as to how the allegedly improper conduct of counsel acted to influence the jury. Appellants point to potentially improper conduct, but fail to discuss how the challenged conduct incited a passion which would influence and consequently prejudice the jury's verdict. Without this nexus, appellants' argument is underdeveloped. However, assuming appellants made some attempt to connect counsel's alleged improper conduct to the jury's verdict, we believe this argument is without merit.
 {¶ 77} We start by noting that in order to have a full grasp of the "complained-of" conduct, we must consider it in the context of the whole trial. See, e.g., Darden v. Wainwright, (1986), 477 U.S. 168. While certain comments or trial methods may appear wholly inappropriate when considered alone, the same behavior may be harmless in light of the entire evidentiary picture. We are also aware that a trial is an adversarial process which may generate tension and acrimony. We cannot, nor should we attempt to make the courtroom a quarantine from the feelings which drive competent, zealous advocacy; with this in mind, it is incumbent upon us to pay careful heed to charges of inflammatory or prejudicial conduct without overmanaging the process.
 {¶ 78} That said, appellants' contentions that counsel repeatedly questioned witnesses improperly and attempted to "back-door" inadmissible evidence is not supported by the record. Appellants contend counsel improperly questioned Evelyn Gibbs,[3] president of the two defendant companies, regarding the bankruptcy of defendant Hazelwood Builders[4]
and stirred the jury's passion by referring to irrelevant and prejudicial evidence, viz., an insurance policy, other cases in which appellants were involved, and judicial orders not directly related to the issues on trial. Appellants further contend counsel improperly attacked defendant Robert Gibbs, accusing him of being "confrontational" and "harassing."
 {¶ 79} The record does indicate that counsel posed questions and offered exhibits regarding these matters; however, the record also shows that appellants' trial counsel objected to each inquiry and offer and the trial court sustained those objections. Moreover, the trial court instructed the jury that "[s]tatements or answers that were striken by the court and which you were instructed to disregard are not evidence and must be treated as though you never heard them." Such a cautionary instruction was adequate to avoid prejudice on these questions. Further, we believe appellants' characterization of counsel's questioning and general trial strategy is hyperbolic and unnecessarily maudlin. While appellees' counsel was aggressive and had occasion to pursue potentially improper avenues of questioning, the numerous sustained objections by appellants' trial counsel served to refocus the testimony on matters relevant to the suit. In the context of the lengthy trial under consideration, we believe the record demonstrates counsel's posture and tactics, while occasionally improper, were not designed to and did not taint the jury's objectivity. The evidence properly admitted was sufficient to support the verdict. Therefore, we do not believe the complained-of conduct influenced the jury such that its verdict was a product of passion and prejudice.
 {¶ 80} Appellants also challenge counsel's comments during his opening statement and closing argument. We emphasize that counsel is afforded great latitude in opening statements and closing arguments. State v.Byrd (1987), 32 Ohio St.3d 79, 82; An assessment of whether the legitimate bounds of "opening" and "closing" have been exceeded is within the sound discretion of the trial court. Pang v. Minch (1990),53 Ohio St.3d 186, paragraphs two and three of the syllabus. An appellate court will reverse a judgment on such grounds only where the circumstances are such that the conduct was so reprehensible or heinous as to constitute prejudice. Smith v. Sass, Friedman Associates, Inc.,
4th Dist. No. 81953, 2004-Ohio-494, at ¶ 26.
 {¶ 81} Appellants note that in his opening statement counsel referred to defendant Robert Gibbs as a "bully," "Buffalo Bob," a "chameleon," and one who "exploits the law" with "phoney corporations." Appellants further underscore counsel's reference to Mr. Gibbs as a "bully" in his closing argument. Like the conduct discussed supra, appellants' counsel objected to each reference. As already highlighted, the trial court provided the jury with cautionary instructions that they should not consider any information based upon a sustained objection or testimony that was "striken" from the record. The court further advised:
 {¶ 82} "The evidence does not include the pleadings or any statement of counsel made during the trial unless such statement was an admission or agreement admitting certain facts. The opening statements and the closing arguments of counsel are designed to assist you. They are not evidence.
 {¶ 83} "* * *
 {¶ 84} "You must not be influenced by any consideration of sympathy or prejudice. Circumstances in this case may arouse sympathy for one party or another. Sympathy is a common human experience. The law does not expect you to be free from such normal human reactions. However, the law and your oath as jurors require you to disregard sympathy and not to permit it to influence your verdict. It is your duty to weigh the questions of fact to apply the instruction to your findings and to render your verdict accordingly."
 {¶ 85} A jury is presumed to have followed the instructions of the trial court. Pang, supra, at paragraph four of the syllabus. Here the cautionary instructions specify that counsels comments during his opening statement and closing argument are not to be considered evidence; moreover, the court clearly ordered the jury to avoid sympathy or prejudice in arriving at its decision.
 {¶ 86} While the record demonstrates counsel made some comments and assertions in his opening statement and closing argument which may have been improper, his conduct was not "`so highly improper or inflammatory as to amount to clear evidence that the verdict was the product of the jury's passion or prejudice.'" Sheets v. Norfolk Southern Corp. (1996),109 Ohio App.3d 278, 292, quoting Lance v. Leohr (1983),9 Ohio App.3d 297, 298. This, in conjunction with the sustained objections and the trial court's jury instructions indicate the verdict was not a product of passion or prejudice.
 {¶ 87} That said, we must address appellees' contention that his comments cannot constitute misconduct because they are "true." While we do not believe the statements were so reprehensible or heinous as to constitute prejudice, we vehemently disagree with appellees' position. The comments made by counsel are not factual assertions but normative conclusions whose veracity depends upon various factual assumptions not in evidence. For instance, the term "bully" is a term whose definition presupposes a negative inference: The only way to arrive at that inference is referencing unsavory details of that party's character not necessarily in evidence. Counsel's comments were improper and he would do well to avoid such conclusory remarks in the future.
 {¶ 88} However, as indicated supra, we do not believe counsel's comments stirred the passions of the jury so significantly that its verdict was a result of prejudice. For the above reasons, appellants' first assignment of error lacks merit.
 {¶ 89} In their third assignment of error, appellants argue the court erred in denying their motion for a new trial or judgment notwithstanding the verdict. Appellants submit roughly the same arguments in support of this assignment of error as those used in their first two assignments of error. In addition, appellants assert that the court committed error in failing to order a new trial because the jury rendered a monetary verdict against Hazelwood Builders, Inc., a defendant whose bankruptcy proceedings were stayed for the purpose of litigating the validity of the mechanics' lien. We disagree.
 {¶ 90} A trial court's decision to grant or deny a new trial is premised upon the weight of the evidence. See, Malone v. Courtyard byMarriott Ltd. Partnership (1996), 74 Ohio St.3d 440, 448, 1996-Ohio-311. In evaluating the propriety of the trial court's decision, we employ an abuse of discretion standard. Poske v. Mergl (1959), 169 Ohio St. 70, paragraphs one and two of the syllabus.
 {¶ 91} Appellants' argument presumes Hazelwood is somehow responsible for a share of the damages; in fact, the verdict indicated that Mr. Gibbs was liable on all claims which indicates appellees successfully pierced the corporate veil. Mr. Gibbs, therefore, is personally liable for the damages regardless of the allocation of liability in the jury's verdict forms. Appellants' argument is unavailing.
 {¶ 92} As we determined appellants' second assignment of error, the jury's verdict was not against the weight of the evidence. Thus, the trial court did not abuse its discretion in denying appellants' motion for a new trial.
 {¶ 93} We find appellants' contention regarding the denial of their motion for judgment notwithstanding the verdict equally unpersuasive. A motion for judgment notwithstanding the verdict should be granted when "`the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.'" Hawkins v. True North Energy, LLC, 11th Dist. Nos. 2002-P-0098, 2002-P-0101, and 2002-P-0102, 2004-Ohio-3341, at ¶ 35, citing Civ.R. 50(A)(4).
 {¶ 94} Our analysis set forth in appellants' second assignment of error illustrates that the trial court's verdict was proper. Thus, when viewing the evidence most strongly in appellees' favor, we hold the trial court did not err in denying appellants' motion for judgment notwithstanding the verdict. Appellants' third assignment of error is without merit.
 {¶ 95} In their final assignment of error, appellants contend that the trial court's judgment awarding appellants' attorneys fees was unwarranted, excessive and not supported by the evidence.
 {¶ 96} An award of attorney fees falls within the sound discretion of the trial court. Pafford v. Woloszyn, 11th Dist. No. 2001-L-206, 2002-Ohio-7261, at ¶ 15. The court will not disturb the trial court's award unless the trial court's decision was arbitrary, unreasonable, or unconscionable. Savage v. Thomas (Aug. 18, 1995), 11th Dist. No. 94-L-062, 1995 Ohio App. LEXIS 3401, at 3-4.
 {¶ 97} Appellants contend that the $25,000 award of attorneys fees was unreasonable and excessive because appellees' trial counsel submitted vague and unspecified exhibits in support of his services. Appellants also allege the amount was unreasonable because appellees' counsel sought recovery for work done prior to the filing of the instant suit. We disagree.
 {¶ 98} After reviewing the invoices in support of counsel's billable services, we hold the court did not make an excessive award. The actual total offered for counsel's services was $35,624.44. This amount was supported by specific documented evidence. Moreover, this amount did not include bills for work prior to the filing of the current matter in November of 1999.
 {¶ 99} Appellants' counsel stipulated on record that the hourly fee charged by appellees' counsel ($125.00 per hour) was reasonable. After computing the billable hours in relation to the current case in thepresence of appellants' counsel, appellees' counsel arrived at an amount of $35,624.44. The trial court awarded appellees' counsel $25,000. We do not think the amount excessive or unreasonable under the circumstances; in fact, if anything, the amount awarded under the circumstances favored appellants.
 {¶ 100} Appellants' final assignment of error is without merit.
 {¶ 101} For these reasons, appellants' four assignments of error are overruled and the judgment of the Lake County Court of Common Pleas is affirmed.
 {¶ 102} In their cross-appeal, cross-appellants raise a single assignment of error:
 {¶ 103} "The court erred by dismissing Evelyn Gibbs on motion."
 {¶ 104} Cross-appellants argue that Mrs. Gibbs, the wife of cross-appellee Robert Gibbs, was improperly dismissed from the suit as she was the president of the defendant corporations at issue and could not be given personal immunity simply because she abandoned all control of the defendant corporations.
 {¶ 105} Before submitting the case to the jury, cross-appellees' counsel moved for a directed verdict on the issue of Mrs. Gibbs liability on the underlying issues. The court granted the motion, stating:
 {¶ 106} "Well, first dealing with Mrs. Evelyn Gibbs, I'm going to dismiss Evelyn Gibbs from this lawsuit, period. I don't think the Plaintiff [sic] has established a piercing of the veil as to her, nor have they made a case against her in any way by preponderance of the evidence so she is dismissed * * *."
 {¶ 107} A directed verdict is properly granted when "`the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.'" Hawkins,
supra, citing Civ.R. 50(A)(4).
 {¶ 108} Ultimately this issue may be resolved by observing whether Mrs. Gibbs would be personally liable for any of the corporate activities for which the jury found the other defendants liable. As indicated supra, an individual officer or shareholder will not generally be held liable for the acts or debts of a corporation. Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. An exception to this rule occurs where the individual sought to be held liable is indistinguishable from the corporation itself, i.e., the individual is merely an "alter ego" of the corporation. Id. The corporate form may be disregarded when the following elements are demonstrated:
 {¶ 109} "(1) control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. paragraph three of the syllabus.
 {¶ 110} Under the circumstances, the evidence showed cross-appellants' could not meet the first prong of the Belvedere test. To wit, Mrs. Gibbs testified to being completely unaware of the operations of the corporations of which she was a presiding officer. She testified repeatedly that she had no specific understanding of her obligations as a corporate officer and testified she "delegated" all decision-making to Mr. Gibbs. Under the circumstances, it is clear that Mrs. Gibbs had no functional control over the defendant corporations. Therefore, we will not reverse the decision of the trial court on this issue by disregarding the corporate entities and imputing personal liability to Mrs. Gibbs.
 {¶ 111} For the foregoing reasons, cross-appellants' sole assignment of error is overruled and the decision of the Lake County Court of Common Pleas is affirmed.
Ford, P.J., Grendell, J., concur.
[1] At trial, appellees claimed the deed they received had been altered and presented evidence that the filed instrument had "white-out" over language indicating the frontage to their property would be maintained. However, appellees' claim of fraudulent inducement was dismissed when the trial court granted appellants' motion for directed verdict. The trial court determined that fraud claim was barred by the four year statute of limitations.
[2] Testimony indicated that several large "concrete planters" were unloaded onto portions of appellees' property which was not subject to the easement. While they were eventually removed, appellees did not give appellants permission to place the large objects on the property.
[3] Mrs. Gibbs was ultimately dismissed from the lawsuit at the close of evidence. We shall address this issue in greater detail on appellee's cross-appeal.
[4] Appellants contend that this reference was prejudicial because the current matter was tried contemporaneously with the exposure of the so-called Enron bankruptcy scandal. Appellees' counsel never mentioned Enron nor drew any untoward parallels to the matter. Because of this, appellants' argument is misplaced. Moreover, it is not altogether clear how this issue would necessarily prejudice appellants: As discussed supra, a litigant seeking to pierce the corporate veil will, many times, try to establish an identity of the corporate entity and its shareholders; here, this line of questioning could have been ultimately probative of appellees' claim.