OPINION
{¶ 1} Appellant, Mr. James Cominsky, appeals from the June 6, 2002 judgment entry of the Lake County Court of Common Pleas, denying both appellant's motion to recuse and motion to vacate judgment, as well as denying the request for sanctions and attorney fees by appellee, Diane Malner.
 {¶ 2} On May 7, 1997, appellant filed a complaint for partition of real estate, unjust enrichment, and quiet title against appellee, and defendants, Andrew and Sylvia Aljancic ("the Aljancics") and Waterfield Financial Corporation. On June 11, 1997, appellant filed a first amended complaint, adding a count for specific performance. On November 20, 1997, appellant filed a second amended complaint setting forth a total of nine separate counts, including newly added counts for malicious prosecution, abuse of process, slander, and intentional infliction of emotional distress. A jury trial commenced on May 18, 1998, in which the trial court granted appellee's and defendants' motion for a directed verdict and dismissed the counts added by the second amended complaint. The remaining claims were tried over five days to the court, which ended on August 18, 1998.
 {¶ 3} Prior to the conclusion of the bench trial, appellee and defendants filed a motion for injunctive relief, seeking to enjoin appellant from threatening, abusing, annoying, harassing, intimidating, telephoning, or having any contact with the parties and their attorneys, which was granted on August 5, 1998, and expanded to included witnesses and court employees. A permanent injunction was later granted on October 9, 1998, to enjoin appellant from having any contact with any of the parties, their attorneys, and the court's staff. On September 2, 1998, appellant's attorney filed a motion to withdraw as counsel. On October 1, 1998, appellant filed a pro se motion for mistrial.
 {¶ 4} Pursuant to the trial court's October 8, 1998 bench trial judgment entry, it was determined that appellant and appellee share a one-half interest in the property identified as 11000 S.R. 86 and recorded as 11770 S.R. 86. As a result, the trial court ordered a partition of the property, pursuant to R.C.5307.04, and appointed commissioners to impartially view and appraise the property in accordance with R.C. 5307.06, which was to be sold at a sheriff's sale on January 19, 1999. However, the sale never took place because all of the remaining proceedings in the bench trial were stayed by appellant's first appeal, Case No. 98-L-242. Also, as part of its October 8, 1998 bench trial entry, the trial court dismissed counts two, three, four, and five of appellant's second amended complaint. Those counts were claims for unjust enrichment (counts two and three); breach of contract (count four); and an action to quiet title (count five). Count six, malicious prosecution; count seven, abuse of process; count eight, slander; and count nine, intentional infliction of emotional distress, were not addressed in the trial court's bench trial entry since they were previously dismissed at the conclusion of the jury trial. The trial court also concluded that judgment should be rendered against appellant and in favor of appellee in the amount of $123,238.86. Also, judgment was rendered in favor of the Aljancics on their counterclaim against appellant and cross-claim against appellee, jointly and severally, in the sum of $111,238. Finally, judgment was rendered against appellant and in favor of the Aljancics on their counterclaim in the amount of $18,000.
 {¶ 5} Following the bench trial, on October 9, 1998, appellant's attorney filed a second motion to withdraw as counsel. On October 21, 1998, appellant filed a pro se motion to terminate counsel's services and a motion for a new trial. Based on its October 23, 1998 judgment entry, the trial court permitted appellant's attorney to withdraw and also ordered all of appellant's pro se motions to be stricken.
 {¶ 6} On November 5, 1998, appellant filed his first appeal through his second attorney, which was affirmed by this court. While his first appeal was pending, appellant filed an affidavit of prejudice with the Supreme Court of Ohio on January 14, 1999, accusing the Honorable Paul H. Mitrovich ("Judge Mitrovich") of being biased and requesting his removal, which was dismissed on February 16, 1999. On March 12, 1999, appellee and the defendants filed a motion to show cause. On June 11, 1999, appellant filed a motion to recuse in which he again accused Judge Mitrovich of being biased. Pursuant to the trial court's June 18, 1999 judgment entries, appellant was found in contempt for violating the permanent injunction, was sentenced to a total of sixty days in jail, and his motion to recuse was denied.
 {¶ 7} On July 1, 1999, appellant's third attorney filed a notice of appeal, Case No. 99-L-101, challenging the June 18, 1999 contempt order. The two appeals, Case Nos. 98-L-242 and 99-L-101, were eventually consolidated and subsequently affirmed by this court on December 29, 2000.[1] Appellant, through his fourth attorney, filed a motion for reconsideration based on the allegation that Judge Mitrovich and appellee's attorney, David M. King ("Attorney King"), are related, which we denied. Appellant then appealed to the Supreme Court of Ohio on June 8, 2001, which declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. On August 21, 2001, appellant filed a petition for a writ of certiorari with the Supreme Court of the United States, which was denied on January 7, 2002. Appellant filed a petition for rehearing, which was denied by the Supreme Court of the United States on February 19, 2002. Appellant's fourth attorney, who has since withdrawn, filed a motion to recuse and a motion to vacate judgment on April 16, 2002, which the trial court denied on June 6, 2002.
 {¶ 8} The facts pertinent to this appeal are as follows: in July 1985, appellant and appellee started dating and the couple began living together in appellee's home, located at 11770 S.R. 86, Concord Township, Ohio. Throughout their relationship, appellant and appellee did not have a specific oral or written agreement concerning how to handle their joint assets. In 1987, appellee purchased a dump truck for $55,000 and created a trucking company in order to supply appellant with employment, in which she borrowed $30,000 from a lending institution and $25,000 from her parents, the Aljancics.
 {¶ 9} In 1989, appellant and appellee purchased 22.39 acres for the sum of $95,000. The Aljancics, who were not then identified as co-owners of the property, provided one-half of the purchase price, while appellant and appellee supplied the remainder. During the summer of 1989, development began on the property. In order to facilitate the building of houses on the property, the Aljancics purchased a bulldozer for $20,000, as well as incurred various other costs associated with the development of the land
 {¶ 10} In 1991, appellant and appellee formed a corporation, American Cherished Homes, Inc. Appellant was fifty-one percent owner and appellee was forty-nine percent owner. The corporation was formed for the purpose of constructing three homes to be built on the property, and existed until 1996, when the corporation was dissolved. In October 1991, 5.011 acres were deeded to the Aljancics so that they could build a home, identified as 10500 S.R. 86, which was completed in 1992.
 {¶ 11} In May 1993, appellant and appellee decided to build a house for investment purposes on one of the lots, identified as 9250 S.R. 86. Appellee obtained a loan in the amount of $70,000. In November 1993, appellee sold her home for $99,000. Appellee then borrowed $83,500 from the Aljancics to cover construction costs at 9250 S.R. 86, which is where she and appellant lived until the property was sold in January 1996, for $260,000.
 {¶ 12} In November 1993, appellant and appellee began construction on a third house, which consisted of 9.89 acres and was identified as 11000 S.R. 86. The house was completed in January 1996 and the total construction cost for the home was $302,000. The following sums of money were applied to the construction of the house: (1) $142,000 of a total $201,000 appellant and appellee borrowed from Cherished American Homes, Inc.; (2) $100,000 appellant and appellee borrowed from the Aljancics; (3) $10,000 appellee borrowed from her credit union; and (4) $50,000 of a $64,000 first mortgage made on the property with Union Federal.
 {¶ 13} Appellant and appellee transferred the deed on the remaining 5.801 acres to the Aljancics in December 1995. Consequently, the Aljancics held title to the 10.812 acres, while appellant and appellee held 9.89 acres. The remaining 1.688 acres were transferred to the purchaser of the property at 9250 Painesville-Warren Road in November 1995.
 {¶ 14} Finally, in April 1997, appellant and appellee parted, and appellant moved out of the residence at 11000 S.R. 86, which is still owned by appellant and appellee as tenants in common. Appellee continued to reside at the home, and the Aljancics continued to reside at 10500 S.R. 86.
 {¶ 15} Pursuant to the June 6, 2002 judgment entry, the trial court denied appellant's motion to recuse and motion to vacate judgment as well as denied appellee's request for sanctions and attorney fees. It is from that judgment that appellant timely filed the instant appeal.
 {¶ 16} Appellant does not specifically set forth his assignments of error pursuant to App.R. 16(A)(3) and Loc.R. 12(C)(4) of the Eleventh District Court of Appeals. Nevertheless, in the interest of justice, because it appears from appellant's brief that his arguments are that Attorney King and Judge Mitrovich are, in fact, related as well as that the trial court erred in denying his Civ.R. 60(B) motion to vacate judgment with respect to the "newly discovered evidence" of a bank draft, we will conduct a review of those issues.
 {¶ 17} In the case sub judice, pursuant to its June 6, 2002 judgment entry, the trial court stated with respect to appellant's motion to recuse that: "[appellant's] allegation that the `[t]rial judge may be related to opposing counsel' has no basis in fact, and is therefore, without merit." We agree.
 {¶ 18} Appellant's continuing argument that Attorney King and Judge Mitrovich are, in fact, related is not credible. As previously addressed, after this court consolidated and subsequently affirmed appellant's two appeals, appellant, through his fourth attorney, filed a motion for reconsideration with this court, which was denied, based on the allegation that Judge Mitrovich and Attorney King are related. Appellant's motion was based on a grossly deficient affidavit that bears no seal of a notary public, and in which the signature of the affiant and the notary public are one and the same. After both the Supreme Court of Ohio and the Supreme Court of the United States declined to hear his attempted appeals, appellant then filed a motion to recuse with the trial court and attached a new, modified affidavit alleging that Attorney King and Judge Mitrovich are related, which the trial court found to be without merit.
 {¶ 19} With regard to appellant's motion to vacate judgment, the trial court stated in its foregoing judgment entry that: "[appellant] fails to demonstrate that he has meritorious claims or defenses to present if relief is granted, or that he is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5)." The trial court specifically stressed that:
 {¶ 20} "[appellant] contends that he has `newly discovered evidence' of a bank draft indicating that only $60,175.36 of a $70,000 loan was used for construction financing, not the full $70,000, as [appellee] had testified at trial. In order to be granted relief under [Civ.R.] 60(B)(2), the moving party must demonstrate that: (1) the evidence was actually `newly discovered', that is, it must have been discovered subsequent to trial; (2) the movant exercised due diligence; and (3) the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result.Holden v. Bureau of Motor Vehicles (1990), 67 Ohio App.3d 531
(Emphasis added.) Here, [appellant] provides no evidence to substantiate that the draft is actually `newly discovered', or that with due diligence it could not have been discovered earlier. Likewise, [appellant] fails to demonstrate that the evidence is not merely impeaching, and that a new trial would produce a different result. Therefore, [appellant] is not entitled to vacation of judgment pursuant to Civ.R. 60(B)(2)."
 {¶ 21} We wholeheartedly agree.
 {¶ 22} Pursuant to Civ.R. 60(B)(2), the trial court properly determined that appellant was not entitled to vacation of judgment since he failed to provide evidence that the bank draft was actually "newly discovered" or that with due diligence it could not have been discovered earlier. Also, the trial court did not err by concluding that appellant failed to demonstrate that the evidence was material, and that a new trial would produce a different result. Every single error alleged in appellant's motion to vacate judgment was previously raised and disposed of in his prior appeals with this court, and, thus, will not be afforded a merit analysis again. Theories of res judicata are used to prevent relitigation of issues already decided by a court or matters that should have been brought as part of a previous action. Grava v. Parkman Twp. Bd. of Zoning Appeals (1995),73 Ohio St.3d 379, 382. Appellant's arguments were either previously raised or should have been raised in his prior actions and, therefore, cannot be relitigated at this juncture. Also, "the doctrine of law of the case precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or available to be pursued, in a first appeal. New arguments are subject to issue preclusion, and are barred." Hubbard ex rel.Creed v. Sauline (1996), 74 Ohio St.3d 402, 404-405. Because the trial court's prior judgment was affirmed in its entirety by this court, this action is subject to the law of the case doctrine, too.
 {¶ 23} On March 24, 2003, appellee filed a motion for sanctions and attorney fees.
 {¶ 24} App.R. 23 provides that: "[i]f a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."
 {¶ 25} In Rome Rock Assoc., Inc. v. Warsing (Dec. 17, 1999), 11th Dist. No. 98-A-0051, 1999 Ohio App. LEXIS 6113, at 25, this court stated that: "[a]lthough App.R. 23 provides that reasonable expenses may be assessed against an appellant who brings a frivolous appeal, it does not define what constitutes such frivolity. Ohio courts, however, have construed a frivolous appeal as one which presents no reasonable question for review. See, e.g., Taylor v. Franklin Blvd. Nursing Home, Inc.
(1996), 112 Ohio App.3d 27, 32 * * *; Talbott v. Fountas
(1984), 16 Ohio App.3d 226 * * *. This court has likewise endorsed this interpretation of App.R. 23. See, e.g., Nozik v.Mentor Lagoons Yacht Club (1996), 112 Ohio App.3d 321, 326." (Parallel citations omitted).
 {¶ 26} As we stated in Kondrat v. Byron (Oct. 28, 1988), 11th Dist. No. 12-213, 1988 Ohio App. LEXIS 4279, at 5, "the decision of whether to award [appellee] the requested attorney fees rests within the sound discretion of this court." We believe that appellant's appeal is not reasonably well grounded in fact, and, therefore, is frivolous. See Edbow, Inc. v. Franklin Cty.Bd. of Revision (1999), 86 Ohio St.3d 1207. Thus, based on App.R. 23, attorney fees should be awarded to appellee.
 {¶ 27} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
Christley and O'Neill, JJ., concur.
[1] Case No. 98-L-242 challenged the foregoing October 8, 1998 bench trial judgment entry.