OPINION
{¶ 1} Appellant, Mr. James Cominsky, appeals from the July 8, 2005 judgment entry of the Lake County Court of Common Pleas, approving the election of appellee, Diane Malner, to purchase the disputed property at its appraised value.
 {¶ 2} The following factual background and procedural history were taken from appellant's third appeal before this court,Cominsky v. Malner, 11th Dist. No. 2002-L-103, 2004-Ohio-2202, in which we affirmed the judgment of the trial court on April 30, 2004.
 {¶ 3} In July 1985, appellant and appellee started dating and the couple began living together in appellee's home, located at 11770 S.R. 86, Concord Township, Ohio. Throughout their relationship, appellant and appellee did not have a specific oral or written agreement concerning how to handle their joint assets. In 1987, appellee purchased a dump truck for $55,000 and created a trucking company in order to supply appellant with employment, in which she borrowed $30,000 from a lending institution and $25,000 from her parents, defendants Andrew and Sylvia Aljancic ("the Aljancics").
 {¶ 4} In 1989, appellant and appellee purchased 22.39 acres for the sum of $95,000. The Aljancics, who were not then identified as co-owners of the property, provided one-half of the purchase price, while appellant and appellee supplied the remainder. During the summer of 1989, development began on the property. In order to facilitate the building of houses on the property, the Aljancics purchased a bulldozer for $20,000, as well as incurred various other costs associated with the development of the land.
 {¶ 5} In 1991, appellant and appellee formed a corporation, American Cherished Homes, Inc. Appellant was fifty-one percent owner and appellee was forty-nine percent owner. The corporation was formed for the purpose of constructing three homes to be built on the property, and existed until 1996, when the corporation was dissolved. In October 1991, 5.011 acres were deeded to the Aljancics so that they could build a home, identified as 10500 S.R. 86, which was completed in 1992.
 {¶ 6} In May 1993, appellant and appellee decided to build a house for investment purposes on one of the lots, identified as 9250 S.R. 86. Appellee obtained a loan in the amount of $70,000. In November 1993, appellee sold her home for $99,000. Appellee then borrowed $83,500 from the Aljancics to cover construction costs at 9250 S.R. 86, which is where she and appellant lived until the property was sold in January 1996, for $260,000.
 {¶ 7} In November 1993, appellant and appellee began construction on a third house, which consisted of 9.89 acres and was identified as 11000 S.R. 86. The house was completed in January 1996, and the total construction cost for the home was $302,000. The following sums of money were applied to the construction of the house: (1) $142,000 of a total $201,000 appellant and appellee borrowed from Cherished American Homes, Inc.; (2) $100,000 appellant and appellee borrowed from the Aljancics; (3) $10,000 appellee borrowed from her credit union; and (4) $50,000 of a $64,000 first mortgage made on the property with defendant Union Federal Savings Bank.
 {¶ 8} Appellant and appellee transferred the deed on the remaining 5.801 acres to the Aljancics in December 1995. Consequently, the Aljancics held title to the 10.812 acres, while appellant and appellee held 9.89 acres. The remaining 1.688 acres were transferred to the purchaser of the property at 9250 Painesville-Warren Road in November 1995.
 {¶ 9} Finally, in April 1997, appellant and appellee parted, and appellant moved out of the residence at 11000 S.R. 86. Appellee continued to reside at the home, and the Aljancics continued to reside at 10500 S.R. 86.
 {¶ 10} On May 7, 1997, appellant filed a complaint for partition of real estate, unjust enrichment, and quiet title against appellee, the Aljancics, and defendant Waterfield Financial Corporation. On June 11, 1997, appellant filed a first amended complaint, adding a count for specific performance. On November 20, 1997, appellant filed a second amended complaint setting forth a total of nine separate counts, including newly added counts for malicious prosecution, abuse of process, slander, and intentional infliction of emotional distress.
 {¶ 11} A jury trial commenced on May 18, 1998, in which the trial court granted appellee's and defendants' motion for a directed verdict and dismissed the counts added by the second amended complaint. The remaining claims were tried over five days to the court, which ended on August 18, 1998.
 {¶ 12} Prior to the conclusion of the bench trial, appellee and defendants filed a motion for injunctive relief, seeking to enjoin appellant from threatening, abusing, annoying, harassing, intimidating, telephoning, or having any contact with the parties and their attorneys, which was granted on August 5, 1998, and expanded to included witnesses and court employees. A permanent injunction was later granted on October 9, 1998, to enjoin appellant from having any contact with any of the parties, their attorneys, and the court's staff. On September 2, 1998, appellant's attorney filed a motion to withdraw as counsel. On October 1, 1998, appellant filed a pro se motion for mistrial.
 {¶ 13} Pursuant to the trial court's October 8, 1998 judgment entry, it was determined that appellant and appellee share a one-half interest in the property identified as 11000 S.R. 86 and recorded as 11770 S.R. 86. As a result, the trial court ordered a partition of the property, pursuant to R.C. 5307.04, and appointed commissioners to impartially view and appraise the property in accordance with R.C. 5307.06, which was to be sold at a sheriff's sale on January 19, 1999. However, the sale never took place because all of the remaining proceedings in the bench trial were stayed by appellant's first appeal, Case No. 98-L-242. Also, as part of its October 8, 1998 entry, the trial court dismissed counts two, three, four, and five of appellant's second amended complaint. Those counts were claims for unjust enrichment (counts two and three); breach of contract (count four); and an action to quiet title (count five). Count six, malicious prosecution; count seven, abuse of process; count eight, slander; and count nine, intentional infliction of emotional distress, were not addressed in the trial court's entry since they were previously dismissed at the conclusion of the jury trial. The trial court concluded that judgment should be rendered against appellant and in favor of appellee in the amount of $123,238.86. Also, judgment was rendered in favor of the Aljancics on their counterclaim against appellant and cross-claim against appellee, jointly and severally, in the sum of $111,238. Finally, judgment was rendered against appellant and in favor of the Aljancics on their counterclaim in the amount of $18,000.
 {¶ 14} Following the bench trial, on October 9, 1998, appellant's attorney filed a second motion to withdraw as counsel. On October 21, 1998, appellant filed a pro se motion to terminate counsel's services and a motion for a new trial. Based on its October 23, 1998 judgment entry, the trial court permitted appellant's attorney to withdraw, ordered all of appellant's pro se motions to be stricken, and indicated that appellant was precluded from filing any further pro se documents, due to his threatening, abusive, annoying, harassing, and intimidating behavior with the parties, their attorneys, and the trial judge.
 {¶ 15} On November 5, 1998, appellant filed his first appeal through his second attorney, challenging the foregoing October 8, 1998 judgment entry, which was affirmed by this court. Cominskyv. Malner (Dec. 29, 2000), 11th Dist. No. 98-L-242, 2000 Ohio App. LEXIS 6205.[1] While his first appeal was pending, appellant filed an affidavit of prejudice with the Supreme Court of Ohio on January 14, 1999, accusing the Honorable Paul H. Mitrovich ("Judge Mitrovich") of being biased and requesting his removal, which was dismissed on February 16, 1999. On March 12, 1999, appellee and the defendants filed a motion to show cause. On June 11, 1999, appellant filed a motion to recuse in which he again accused Judge Mitrovich of being biased. Pursuant to the trial court's June 18, 1999 judgment entries, appellant was found in contempt for violating the permanent injunction, was sentenced to a total of sixty days in jail, and his motion to recuse was denied.
 {¶ 16} On July 1, 1999, appellant's third attorney filed a notice of appeal, Case No. 99-L-101, challenging the June 18, 1999 contempt order. We affirmed the judgment of the trial court in appellant's second appeal. Cominsky v. Malner (Dec. 29, 2000), 11th Dist. No. 99-L-101, 2000 Ohio App. LEXIS 6204. Appellant, through his fourth attorney, filed a motion for reconsideration based on the allegation that Judge Mitrovich and appellee's attorney, David M. King ("Attorney King"), are related, which we denied. Appellant then appealed to the Supreme Court of Ohio on June 8, 2001, which declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. On August 21, 2001, appellant filed a petition for a writ of certiorari with the Supreme Court of the United States, which was denied on January 7, 2002. Appellant filed a petition for rehearing, which was denied by the Supreme Court of the United States on February 19, 2002. Appellant's fourth attorney, who has since withdrawn, filed a motion to recuse and a motion to vacate judgment on April 16, 2002.
 {¶ 17} Pursuant to its June 6, 2002 judgment entry, the trial court denied appellant's motion to recuse and motion to vacate judgment, as well as denied appellee's request for sanctions and attorney fees. Appellant filed a notice of appeal, Case No. 2002-L-103, asserting that Attorney King and Judge Mitrovich are related as well as that the trial court erred in denying his Civ.R. 60(B) motion to vacate judgment. We affirmed the judgment of the trial court in appellant's third appeal on April 30, 2004.Cominsky v. Malner, 11th Dist. No. 2002-L-103, 2004-Ohio-2202.
 {¶ 18} On September 30, 2004, appellee filed a "Motion For Order Allowing Parties Ten Days To Purchase At Appraised Value And Order Of Sale[.]" On December 7, 2004, the trial court granted appellee's motion and further indicated that unless an election to purchase at appraised value is filed within ten days, it would order a sale of the estate at public auction pursuant to R.C. 5307.11. On December 17, 2004, appellee filed an election to purchase the property at its appraised value of $540,000 or $270,000 for a one-half interest. Appellee filed a "Motion For Order Directing Terms Of Payment With Memorandum" on December 20, 2004, and a later amended motion on May 6, 2005.
 {¶ 19} A hearing was held on May 6, 2005.
 {¶ 20} At that hearing, appellee's attorney indicated that appellee elected to purchase the property at its appraised value, and that he itemized all of the expenses, interests, and judgments. Appellee's representative stated that $287,689.97 was needed in order to pay the court costs, first mortgage, taxes, interests, penalties, and attorney fees.
 {¶ 21} The trial judge asked appellant, who appeared pro se, if he had any questions. Appellant replied that he had objections to "everything." Specifically, appellant alleged that the trial court's judgment "is missing $136,000.00 * * * by simple math and subtraction * * * [and that] by allowing this to occur [the trial court is] allowing IRS tax evasion to happen * * * [as well as] survivorship fraud * * *." The trial judge indicated that appellant's objections were noted.
 {¶ 22} At the conclusion of the hearing, appellant indicated that he wanted to file a pro se motion in opposition to appellee's motion directing terms of payment. The trial judge responded that he was not permitted to file any more pro se motions based on the previous court order.[2] After being asked by the trial judge if there was anything else he wanted to put on the record, appellant stated the following: "I would like to put on the record all the misstatements of truth and I would also like to put on the record that this Court is ordering a sale of a home at the $540,000.00 1980 or 1998 appraisal value without reappraising the house at the current market value so I object to letting the defendants buy the house back at a value that was established in 1998 by the Court or '99 whenever the Court appraised, I believe it was in January of 1999."
 {¶ 23} Pursuant to its July 8, 2005 judgment entry, the trial court approved appellee's election to purchase the disputed property at its appraised value of $540,000. The trial court ordered appellee to pay, within thirty days, the Lake County Sheriff the sum of $288,013.99, which would represent payment in full of the purchase price for the premises at the appraised value of $540,000. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error in his fourth appeal before this court:[3]
 {¶ 24} "[1.] The trial court erred to [appellant's] [c]onstitutional right to (due process of law) [a]s guaranteed under the Fourteenth Amendment of the U.S. Federal Constitution. Whereas, the trial court denied [appellant] the right to represent himself during and leading up to the trial court'sfinal appealable order[,] [e]ven though * * * the trial court knew [appellant] was indigent during this time, which ultimately resulted in the loss of property (at the trial courtlevel)[.]
 {¶ 25} "[2.] The trial court erred to [appellant], by not ordering a new appraisal of the subject property's current and much higher market value of July 2005."
 {¶ 26} In his first assignment of error, appellant argues that the trial court erred by denying him his constitutional right to represent himself.[4]
 {¶ 27} The doctrine of res judicata is used to prevent relitigation of issues already decided by a court or matters that should have been brought as part of a previous action. "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. Bd. of Zoning Appeals
(1995), 73 Ohio St.3d 379, 382. Res judicata "applies to extinguish a claim by the plaintiff against the defendant eventhough the plaintiff is prepared in the second action (1) [t]opresent evidence or grounds or theories of the case not presentedin the first action, or (2) [t]o seek remedies or forms of reliefnot demanded in the first action." (Emphasis sic.) Id. at 383. The purpose of the doctrine of res judicata is to prevent repeated attacks on a final judgment. Stromberg v. Bd. of Edn.of Bratenahl (1980), 64 Ohio St.2d 98, 100.
 {¶ 28} "[T]he doctrine of law of the case precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or available to be pursued, in a first appeal. New arguments are subject to issue preclusion, and are barred." Hubbard ex rel. Creed v. Sauline (1996),74 Ohio St.3d 402, 404-405.
 {¶ 29} In the case at bar, appellant takes issue with the trial court not allowing him to represent himself pro se, with respect to the filing of motions. In his first appeal before this court, Case No. 98-L-242, appellant also asserted, in his ninth assignment of error, that the trial court erred by prohibiting him from representing himself pro se, regarding not allowing him to file any pro se motions. We held in appellant's first appeal that "[i]n view of appellant's efforts to intimidate the trial court, the trial court was well within its rights to deny him the right to represent himself pro se. Thus, appellant's ninth assignment of error is not well-taken." Cominsky, supra, 11th Dist. No. 98-L-242, at 17.
 {¶ 30} Again, the foregoing prohibition is in reference to appellant's threatening, abusive, annoying, harassing, and intimidating behavior with the parties, their attorneys, and the trial judge. As addressed in appellant's first appeal, if an individual deliberately engages in serious and obstructionist misconduct, the trial court may terminate self-representation. Id.; Faretta v. California (1975), 422 U.S. 806, 834.
 {¶ 31} We note that with respect to the instant appeal, appellant filed three pro se briefs with this court. His first brief was filed on September 12, 2005, and was stricken on January 5, 2006. Appellant filed an amended brief on September 19, 2005, which was stricken on February 9, 2006.
 {¶ 32} In a February 10, 2006 judgment entry, this court determined that appellant's appellate brief should address the sole issue of whether the trial court should have ordered a new appraisal of the subject property prior to rendering the appealed judgment in this matter. We stated that "[i]n regard to [a]ppellant's amended appellate brief, we would also note that he has asserted five other assignments of error besides the `appraisal' assignment. Of the five, four of them pertain to issues which either have, or could have been, raised in [a]ppellant's prior appeals from the same underlying case. For example, [a]ppellant's first assignment contends that the trial court erred in not allowing him to precede pro se in filing certain post-trial motions. However, the merits of this particular point were already fully addressed in our prior opinion under Cominsky v. Malner (Dec. 29, 2000), 11th Dist. No. 98-L-242, 2000 Ohio App. LEXIS 6205, and cannot be readdressed in the context of this appeal."
 {¶ 33} Shortly after the foregoing judgment entry was filed, appellant filed his third pro se brief on March 2, 2006, in which he again asserted that the trial court erred by prohibiting him from representing himself pro se. Because this issue has already been decided in a previous action before this court, it is subject to res judicata. This action is also subject to the law of the case doctrine. Appellant cannot use this court as a forum to repeatedly attack a final judgment.
 {¶ 34} Appellant's first assignment of error is without merit.
 {¶ 35} In his second assignment of error, appellant contends that the trial court erred by not ordering a new appraisal of the subject property's current and higher market value of July 2005.[5]
 {¶ 36} Pursuant to App.R. 16(A)(7), an appellant is required to include in his appellate brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."
 {¶ 37} In Hawkins v. Anchors, 11th Dist. Nos. 2002-P-0098, 2002-P-0101, and 2002-P-0102, 2004-Ohio-3341, at ¶ 59-60, quotingVillage of S. Russell v. Upchurch, 11th Dist. Nos. 2001-G-2395 and 2001-G-2396, 2003-Ohio-2099, at ¶ 10, this court stated:
 {¶ 38} "`[a]n appellant "bears the burden of affirmatively demonstrating error on appeal." Concord Twp. Trustees v.Hazelwood Builders (Mar. 23, 2001), 11th Dist. No. 2000-L-040, 2001 Ohio App. LEXIS 1383. It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error. See Kremer v. Cox (1996),114 Ohio App.3d 41, 60 * * *. Furthermore, if an argument exists that can support appellant's assignments of error, "it is not this court's duty to root it out." Harris v. Nome, 9th Dist. No. 21071, 2002-Ohio-6994, (* * *).' (Parallel citations omitted.)"
 {¶ 39} In the case sub judice, appellant has failed to support his assertions, and did not set forth a single, legal authority to support his contention that the trial court erred by not ordering a new appraisal of the subject property's current and higher market value of July 2005. Thus, in appellant's second assignment of error, he clearly did not follow the requirements of App.R. 16(A)(7).
 {¶ 40} "`Pro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors.'" (Emphasis sic.) Karnofel v.Cafaro Mgt. Co. (June 26, 1998), 11th Dist. No. 97-T-0072, 1998 Ohio App. LEXIS 2910, at 6, quoting Meyers v. First Natl. Bankof Cincinnati (1981), 3 Ohio App.3d 209, 210. See, also, Sonogav. Trumbull Cty. Child Support Enforcement Agency, 11th Dist. No. 2004-T-0115, 2005-Ohio-3615, at ¶ 10.
 {¶ 41} Appellant's second assignment of error is overruled.
 {¶ 42} On September 28, 2005, appellee filed a motion for sanctions and attorney fees. Pursuant to this court's November 9, 2005 judgment entry, we determined that appellee's motion would be held in abeyance pending the disposition of this appeal.
 {¶ 43} App.R. 23 provides: "[i]f a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."
 {¶ 44} In Rome Rock Assoc., Inc. v. Warsing (Dec. 17, 1999), 11th Dist. No. 98-A-0051, 1999 Ohio App. LEXIS 6113, at 25, this court stated:
 {¶ 45} "[a]lthough App.R. 23 provides that reasonable expenses may be assessed against an appellant who brings a frivolous appeal, it does not define what constitutes such frivolity. Ohio courts, however, have construed a frivolous appeal as one which presents no reasonable question for review. See, e.g., Taylor v. Franklin Blvd. Nursing Home, Inc. (1996),112 Ohio App.3d 27, 32 * * *; Talbott v. Fountas (1984),16 Ohio App.3d 226 * * *. This court has likewise endorsed this interpretation of App.R. 23. See, e.g., Nozik v. Mentor LagoonsYacht Club (1996), 112 Ohio App.3d 321, 326 * * *." (Parallel citations omitted.)
 {¶ 46} As we stated in Kondrat v. Byron (Oct. 28, 1988), 11th Dist. No. 12-213, 1988 Ohio App. LEXIS 4279, at 5: "the decision of whether to award [appellee] the requested attorney fees rests within the sound discretion of this court." We believe that appellant's appeal is not reasonably well grounded in fact, and, therefore, is frivolous. See Edbow, Inc. v. Franklin Cty.Bd. of Revision (1999), 86 Ohio St.3d 1207. Thus, based on App.R. 23, attorney fees should be awarded to appellee upon the filing of appropriate submissions to this court.
 {¶ 47} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
William M. O'Neill, J., Colleen Mary O'Toole, J., concur.
[1] In his first appeal, appellant asserted ten assignments of error. This court affirmed the judgment of the trial court in all respects, including the order prohibiting appellant from representing himself and filing any more pro se documents, again, due to his threatening, abusive, annoying, harassing, and intimidating behavior with the parties, their attorneys, and the trial judge.
[2] The trial judge's response is in reference to appellant's ninth assignment of error in his first appeal before this court, which, again, we affirmed.
[3] On July 15, 2005, appellant filed a motion for stay, which was granted by this court on July 28, 2005, contingent upon appellant posting a supersedeas bond in the amount of $110,000, which he failed to post.
[4] There is nothing in the record before us to support appellant's assertion that he is indigent.
[5] We note that appellant was given an opportunity by the trial judge, at the May 6, 2005 hearing, to put additional information on the record. Again, appellant indicated that the trial court ordered the sale of the home without reappraising it at the current market value.