OPINION
{¶ 1} These are consolidated appeals from judgment entries entered by the Painesville Municipal Court arising out of a home construction contract. On review, we affirm the trial court`s January 26, 2006 judgment entry and reverse the trial court`s February 1, 2006 judgment entry.
 {¶ 2} On January 20, 1999, Mark and Stacy Zukowski ("the Zukowskis") entered into an agreement with W. R. Martin, Inc. ("Martin") to construct their home at 11315 South Forest Drive, Concord, Ohio. The agreement included construction of a patio, but inclement weather prevented the construction of the patio at that time. Martin gave the Zukowskis a credit of $600, because it was not able to construct the patio as agreed.
 {¶ 3} In the spring of 2000, the Zukowskis solicited Martin for an estimate to construct the patio and a porch. Martin provided an estimate of $7,300, and the Zukowskis agreed to this estimate. The patio and porch were completed in August 2000.
 {¶ 4} The Zukowskis received an invoice for the patio and porch work from Martin in March 2003. The amount due for the porch and patio as per the invoice was $7,257.88.
 {¶ 5} In November 2004, Martin sued the Zukowskis for non-payment of its invoice for construction of the patio and the porch.
 {¶ 6} The matter was heard by a magistrate on June 8, 2005. The issue at trial was whether the Zukowskis ever paid Martin for the patio and porch.
 {¶ 7} At trial, Stacy Zukowski testified that, after she was quoted the figure of $7,300 for the job by Martin, she contacted her father in Florida in August 2000 to borrow money for the patio. Her father decided to give her the money and sent three money orders to her, two in the amount of $2,500, and one in the amount of $2,250 or $2,300. She testified that the three money orders were made payable to Martin.
 {¶ 8} On cross-examination, she admitted that she had signed an affidavit in May 2005 that her father gave her and her husband cash to pay for the patio, and that they had obtained a money order for the exact amount of the invoice to pay Martin. She later testified that the payment to Martin was in the amount of $7,260.
 {¶ 9} With respect to the delay in billing the Zukowskis for 32 months from the date of completion of the patio and porch, William Martin, owner of Martin, testified that, due to heavy truck traffic and mud from the trucks, it was company policy not to bill homeowners for the patio work until all the patios were completed and all landscaping work was done. This delay in billing was extended as a courtesy to the homeowners. In addition, Martin testified that this delay in billing served to ensure that all warranty items were completed by the time the patio invoice was sent.
 {¶ 10} The decision of the magistrate recommended judgment in favor of the Zukowskis and against Martin on the issue whether the Zukowskis had paid Martin for its work. The trial court adopted the decision of the magistrate.
 {¶ 11} Martin then timely filed a request for findings of fact and conclusions of law. In response, the magistrate issued findings of fact and conclusions of law, as well as an amended magistrate`s decision. Martin then filed objections to the magistrate`s decision.
 {¶ 12} On September 8, 2005, the trial court issued a judgment entry that asked the magistrate to specifically define the evidence of payment to Martin by the Zukowskis, to which the magistrate responded with findings of specific evidence.
 {¶ 13} On October 3, 2005, the trial court gave the Zukowskis 60 days to produce physical evidence of their payments to Martin. This order was then extended an additional 30 days.
 {¶ 14} On January 26, 2006, the trial court reversed the magistrate`s decision and entered judgment in favor of Martin in the amount of $7,257.88.
 {¶ 15} On February 1, 2006, Martin filed a motion for prejudgment interest, which the trial court denied the same day.
 {¶ 16} The Zukowskis filed a notice of appeal to this court from the trial court`s judgment entry of January 26, 2006. Martin appealed the trial court`s entry of February 1, 2006, that denied its motion for prejudgment interest. The two appeals have been consolidated by this court.
 {¶ 17} The Zukowskis have raised two assignments of error in this court, which are:
 {¶ 18} "[1.] The trial court erred to the prejudice of Appellants in reversing the Magistrate`s Decision.
 {¶ 19} "[2.] The trial court erred in not barring Appellee`s claim under the doctrine of laches."
 {¶ 20} Martin has raised a single assignment of error in this court:
 {¶ 21} "The trial court erred to the prejudice of Appellee/Cross-Appellant in denying Appellee/Cross-Appellant`s motion for an award of prejudgment interest."
 {¶ 22} Though Martin has referred to itself as a cross-appellant, it does not seek to change the trial court`s judgment entry of January 26, 2006, and, therefore, it is not a cross-appellant with respect to that entry.[1] Instead, it is an appellee with respect to that entry, and an appellant with respect to the trial court`s judgment entry of February 1, 2006.
 {¶ 23} We first address the Zukowskis` first assignment of error to determine whether the trial court erred in reversing the decision of the magistrate. The standard of review for this determination is pursuant to an abuse of discretion standard.[2] Abuse of discretion "implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable."[3]
 {¶ 24} Civ. R. 53(D)(4) states the actions to be taken by a trial court with respect to a magistrate`s decision where objections are filed. Prior to July 1, 2006, the rule was denominated as Civ. R. 53(E)(4), and provided, in pertinent part:
 {¶ 25} "(4) Court`s action on magistrate`s decision.
 {¶ 26} "(a) When effective. The magistrate`s decision shall be effective when adopted by the court. * * *
 {¶ 27} "(b) Disposition of objections. The court shall rule on any objections [sic] the court may adopt, reject, or modify the magistrate`s decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter."
 {¶ 28} Martin filed objections to the magistrate`s decision.
 {¶ 29} The Twelfth Appellate District has stated, in explanation of the trial court`s duty, pursuant to Civ. R. 53(E)(4)(b), to "adopt, reject, or modify the magistrate`s decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter," where objections have been filed, as follows:
 {¶ 30} "The trial court has the `ultimate authority and responsibility over the (magistrate`s) findings and rulings.`[4] As the ultimate fact finder, the trial court judge decides `whether the (magistrate) has properly determined the factual issues and appropriately applied the law, and, where the (magistrate) has failed to do so, the trial court must substitute its judgment for that of the (magistrate).`[5]"[6]
 {¶ 31} Further, the Ninth Appellate District has explained that error, if any, committed by the trial court focuses not on the magistrate`s decision, but on the trial court`s judgment entry:
 {¶ 32} "`Any claim of trial court error must be based on the actions of the trial court, not on the magistrate`s findings or proposed decision.`[7] * * * Consequently, the focus in this assignment of error is on the trial court`s actions and not the actions of the magistrate."[8]
 {¶ 33} Therefore, this court reviews the trial court`s judgment entry for an abuse of discretion, that is, whether, in rejecting the magistrate`s decision "the court`s attitude (was) unreasonable, arbitrary, or unconscionable."[9]
 {¶ 34} In their argument in this court, the Zukowskis concede that the trial court must conduct a de novo review of the magistrate`s decision. However, they assert that the trial court should defer to the findings of the magistrate according to a manifest weight of the evidence standard, in the same way that an appellate court defers to the findings of the trial court in a manifest weight of the evidence analysis.[10]
Though they conclude their argument by saying that the trial court abused its discretion, they support their conclusion by asserting that the trial court substituted its judgment of the witnesses` credibility for that of the magistrate`s. They assert the further error on the part of the trial court that "it is unreasonable of the trial court to expect that evidence must be available."
 {¶ 35} The Zukowskis` argument loses sight of the fact that it is the responsibility of the trial court to perform a de novo review of the magistrate`s decision where objections have been filed, and that it is the prerogative of the trial court to substitute its judgment for that of the magistrate.[11]
 {¶ 36} As the ultimate trier of fact, the trial court was required to conclude that, lacking any documentary evidence of payment, the Zukowskis failed to carry their burden to prove by the greater weight of the evidence or by more convincing evidence that payment to Martin had been made. In the absence of documentary evidence, it was reasonable for the trial court to conclude that the Zukowskis did not pay Martin. Further, even though the hearing took place before a magistrate, the trial court was also privileged to make its own judgment concerning the credibility of the witnesses, including the inconsistent nature of Stacy Zukowski`s testimony. In doing so, the trial court was fulfilling its responsibility under Civ. R. 53(E)(4)(b). There was no abuse of discretion committed by the trial court.
 {¶ 37} The Zukowskis` first assignment of error is without merit.
 {¶ 38} In their second assignment of error, the Zukowskis assert that Martin`s claim should be barred by laches.
 {¶ 39} "Laches is an affirmative defense which must be set forth by the party asserting it. Civ. R. 8(C). If the defense of laches is not affirmatively raised in the trial court, it is waived."[12]
 {¶ 40} "[L]aches involves an omission by a party to assert a right for an unreasonable and unexplained length of time under circumstances that materially prejudice an opposing party."[13] However, the mere lapse of time to assert a right is not enough to infer prejudice.[14]
 {¶ 41} "This court has recognized that there are two types of material prejudice which necessitate the application of laches: (1) the loss of evidence helpful to a defendant`s case; or (2) a change in the defendant`s position that would not have occurred had the plaintiff not delayed in asserting [its] rights."[15] Further, "the party asserting the defense [of laches] has the burden of demonstrating that the delay materially prejudiced [him]"[16] Finally, "[a] reviewing court will not disturb the findings of the trial court if they are supported by competent, credible evidence."[17]
 {¶ 42} The Zukowskis have argued in this court that the defense of laches bars Martin`s claim. They assert that Martin`s delay in billing them was pursuant to a policy of which they had no notice, and that they were materially prejudiced because Stacy Zukowski`s father had no reason to retain documentation for a patio that did not belong to him. In addition, Stacy Zukowski`s father moved from Florida, where he was living in 2000, to North Carolina and has no recollection of the bank in Florida where he might have bought the money orders.
 {¶ 43} On the other hand, Martin argues that the Zukowskis have waived the defense of laches, because they did not raise it in their response to Martin`s motion for summary judgment, did not move for a directed verdict on the basis of laches at the conclusion of Martin`s case, and did not raise it their response to Martin`s objections filed after the magistrate`s hearing.
 {¶ 44} We do not agree with Martin that the Zukowskis have waived the defense of laches. At trial, the subject of Martin`s delay in waiting 32 months to send its invoice was touched on in Martin`s direct testimony and cross-examination. In addition, his sister, the bookkeeper for the company, testified that there was a delay in invoicing the Zukowskis until March 2003. The fact that the Zukowskis did not raise the defense of laches at other times does not constitute waiver of that defense where it was pleaded in their answer as an affirmative defense and came up, at least by implication, at trial.[18] Therefore, the defense of laches was not waived.[19]
 {¶ 45} In the amended magistrate`s decision, the magistrate emphasized the fact that the Zukowskis had not received notice of Martin`s delayed billing policy and that Martin did not put on evidence to corroborate that, in fact, he had a delayed billing policy. However, as the proponent of the defense of laches, the burden to show material prejudice from the delay in billing was on the Zukowskis, not on Martin. The trial court reversed the magistrate`s decision and, thus, by implication, reversed the magistrate`s finding on the issue of the delayed billing.
 {¶ 46} Moreover, the Zukowskis offered no evidence to show that they were materially prejudiced by the length of time it took for them to receive their invoice, either as it resulted in the loss of evidence that would have been helpful to their case or as it changed their position from what it would have been without the delay in billing. Their testimony was that they received three money orders made payable to Martin from Stacy`s father, that Stacy`s father took cash from his safety deposit box and turned the cash into money orders at a bank in Florida, that they simply handed the money orders to Martin, and that Stacy`s father had no documentation to back up the purchase of money orders. This testimony may explain why Stacy`s father was prejudiced in trying to locate documentation for the money orders, but it does not explain why the Zukowskis themselves were prejudiced.
 {¶ 47} Thus, the Zukowskis offered no evidence as to why they did not demand a receipt or an invoice marked "paid" from Martin in August 2000, when they allegedly paid for the patio and porch. Nor did they testify as to their efforts to locate the bank in Florida and the money order receipts for the money orders bought by Stacy`s father in August 2000. After all, Florida banks and financial institutions are required to keep records of such transactions for a minimum of five years,[20] and federally insured banks for a minimum of six years,[21] both of which are well in excess of the 32-month delay in this case. Finally, notwithstanding that Stacy`s father moved from Florida to North Carolina sometime after 2000, her father did not explain how it could be that he could not remember the name of the bank in Florida where he housed a large quantity of cash in his safe deposit box, and that he immediately turned into three money orders. Unless he stored cash in safe deposit boxes in every bank in Naples, Florida, ordinarily this would not seem to pose an insurmountable burden upon the Zukowskis to locate the exact bank where the money orders were purchased. In short, they did not lose evidence as a result of the delay in billing. Instead, they did not take reasonable measures to preserve evidence at the time of their alleged payment, nor did they take reasonable measures to attempt to secure available evidence at the time they received Martin`s invoice. Their attempt to attribute prejudice to themselves from the father`s difficulties in locating records was not sufficient for the trial court to conclude that they were materially prejudiced. There did not exist competent, credible evidence to support their defense of laches. The trial court did not abuse its discretion in ruling for Martin with respect to his claim for money due and owing.
 {¶ 48} The Zukowskis` second assignment of error is without merit.
 {¶ 49} In its single assignment of error, Martin asserts that the trial court committed prejudicial error in not awarding it prejudgment interest.
 {¶ 50} Prejudgment interest is permitted by R.C. 1343.03(A). R.C. 1343.03(A), as it existed on the date of Martin`s invoice (March 19, 2003), plus ten days allowed for payment (March 29, 2003), read, in pertinent part:
 {¶ 51} "(A) [W]hen money becomes due and payable * * * upon any book account * * * or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."
 {¶ 52} On June 2, 2004, this statute was amended to provide that prejudgment interest would be determined by R.C. 5703.47, pursuant to which the Ohio Tax Commissioner sets the rate for each succeeding year.[22] The tax commissioner has decreed that the rate for 2004 is four percent, and the rate for 2005 is five percent.[23] For 2006, the tax commissioner`s website lists the rate at six percent.[24]
 {¶ 53} This court has previously held that trial courts do not have discretion in awarding prejudgment interest on claims arising from a breach of contract:
 {¶ 54} "`[T]he award of prejudgment interest with respect to claims arising out of breach of contract is governed by R.C. 1343.03(A). * * * "Under R.C. 1343.03(A), a trial court does not have discretion in awarding prejudgment interest."`"[25] Further, the aggrieved party is to be compensated with prejudgment interest "for the period of time between accrual of the claim and judgment[.]"[26]
 {¶ 55} In this case, Martin`s contract payment of $7,257.88 was due and owing from the Zukowskis on March 29, 2003. Martin was entitled to prejudgment interest on this amount from March 29, 2003, up to and including January 26, 2006, the date of judgment. The trial court did not have discretion whether prejudgment interest was to be awarded, and its failure to do so constituted an abuse of discretion.
 {¶ 56} Consequently, we find merit in Martin`s assignment of error.
 {¶ 57} This matter is remanded to the trial court in order for that court to calculate and award Martin prejudgment interest as provided by law.
 {¶ 58} The trial court`s January 26, 2006 judgment entry is affirmed. The trial court`s February 1, 2006 judgment entry is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.
DIANE V. GRENDELL, J., concurs,
COLLEEN MARY OTOOLE, J., concurs in judgment only.
[1] App. R. 3(C)(1).
[2] Kubin v. Kubin (2000), 140 Ohio App.3d 367, 374.
[3] Ruwe v. Bd. of Springfield Twp. Trustees (1987), 29 Ohio St.3d 59,61.
[4] Hartt v. Munobe (1993), 67 Ohio St.3d 3, 5.
[5] Inman v. Inman (1995), 101 Ohio App.3d 115, 118.
[6] Kubin v. Kubin, 140 Ohio App.3d at 371.
[7] Mealey v. Mealey (May 8, 1996), 9th Dist. No. 95CA0093,1996 Ohio App. LEXIS 1828, at *6.
[8] In re Woodburn (Jan. 2, 2002), 9th Dist. No. 20715,2002 Ohio App. LEXIS 1, at *5.
[9] State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.
(1995), 72 Ohio St.3d 106, 107.
[10] See, e.g., In re Estate of Visnich, 11th Dist. No. 2005-T-0128,2006-Ohio-5499, at ¶ 20.
[11] (Citation omitted.) Citibank South Dakota, N.A. v. Brooks, 11th Dist. No. 2003-L-149, 2004-Ohio-5318, at ¶ 13.
[12] Sassen v. Sassen (Mar. 1, 1995), 2d Dist. No. 94 CA 62,1995 Ohio App. LEXIS 898, at *6.
[13] (Citations omitted.) Sutton v. Ohio State Bd. of Pharmacy (Apr. 30, 2002), 11th Dist. Nos. 2001-T-0030, 2001-T-0031, and 2001-T-0032,2002 Ohio App. LEXIS 2051, at *8.
[14] Id. at *9.
[15] (Citations omitted.) Id.
[16] (Citation omitted.) Portage Cty. Bd. of Commrs. v. Akron,156 Ohio App.3d 657, 2004-Ohio-1665, at ¶ 123.
[17] Ferree v. Sparks (1991), 77 Ohio App.3d 185, 188.
[18] See Sassen v. Sassen, supra, at *6.
[19] See 2-8 Moore`s Federal Practice — Civil § 8.07[3]
[20] Fla. Stat. § 655.91(2).
[21] Section 1829b, Title 12, U.S. Code.
[22] Jem Real Estate v. Heyden, Heyden Hindinger,134 Ohio Misc.2d 5, 2005-Ohio-5935, at ¶ 12.
[23] Id. at ¶ 14.
[24] http://tax.ohio.gov/divisions/ohio individual/individual/interestrates.stm. [visited Dec. 14, 2006.]
[25] (Internal citation omitted.) Hawkins v. Anchors, 11th Dist. Nos. 2002-P-0098, 2002-P-0101 and 2002-P-0102, 2004-Ohio-3341, at ¶ 63, quoting Brittain v. Jelenic, 11th Dist. No. 2001-L-099, 2002-Ohio-2974, at ¶ 8.
[26] Royal Elec. Constr. Corp. v. Ohio State Univ. (1995),73 Ohio St.3d 110, syllabus.