OPINION
{¶ 1} Francesca Brumley and Sly Parham appeal from the judgment of the Ravenna Division of Portage County Municipal Court, which issued a writ of restitution in connection with an eviction complaint filed by Portage Metropolitan Housing Authority ("PMHA"). Ms. Brumley and Mr. Parham, her adult son, are tenants at a rental unit owned by PMHA. PMHA initiated the instant eviction matter because of Mr. Parham's *Page 2 
engagement of criminal activity, a violation of their lease agreement. For the following reasons, we affirm the judgment of the court.
 {¶ 2} Substantive Facts and Procedural History
 {¶ 3} The record shows that Ms. Brumley was a long-term tenant at a rental unit owned by PMHA, which administers low-income federal housing programs in Portage County, Ohio, as an agent of the Department Housing and Urban Development ("HUD").
 {¶ 4} PMHA's Screening and Eviction for Drug Abuse and Other Criminal Activity Policy stated that PMHA instituted certain policies pursuant to the Housing Opportunity Extension Act of 1996 and the "One Strike and You're Out" policy adopted by the federal government. The Policy's purpose is to ensure those who engage in illegal drug use or other criminal activities that endanger the well-being of residents are not allowed to live in public housing. The Policy provides that:
 {¶ 5} "It is the policy of PMHA to evict tenants for any drug-related criminal activity occurring on or off the premises and for any other criminal activity, if it threatens the health, safety or right to peaceful enjoyment of the premises by other tenants, employees of PMHA, or persons residing in the vicinity."
 {¶ 6} The Policy further provides that:
 {¶ 7} "It is the policy of PMHA to make tenants responsible for the conduct of everyone in their households, and when, by executing the lease, a tenant has promised to ensure a crime-free household, the tenant is responsible for the household regardless as to whether he or she was personally engaged in the prohibited drug or other activity." *Page 3 
 {¶ 8} Ms. Brumley signed a lease with PMHA in August 1988.
 {¶ 9} In early 2005, Ms. Brumley's adult son, Mr. Parham, applied to PMHA for his addition to her lease. While processing his application, PMHA discovered his involvement in several criminal activities, which included a failure to comply and obstructing official business in January 2002, disorderly conduct in July 2002, and criminal damaging in February 2004. After a hearing, PMHA allowed Mr. Parham to be added as a tenant in Ms. Brumley's lease. According to Cynthia Blevins, Property Manager at PMHA, the agency wanted to give him the benefit of the doubt and afford him an opportunity to become a tenant. On July 12, 2005, Ms. Brumley and Mr. Parham signed a lease with PMHA.
 {¶ 10} The lease provides for lease termination upon certain conditions. Section (11) of Article XIV of the lease provides:
 {¶ 11} "(A) This lease may be terminated only for serious or repeated violations of material terms of the Lease * * *.
 {¶ 12} "Serious or repeated violation of material terms of the lease shall include but not be limited to:
 {¶ 13} "* * *.
 {¶ 14} "(11) Criminal activity by Tenant, household member, guest, or other person under Tenant's control, or upon the development premises at the invitation of the Tenant or with Tenant's permission or consent, including criminal activity that threatens the health, safety or right to peaceful enjoyment of the Authority's public housing premises by other Tenants or employees, or any illegal drug-related activity on *Page 4 
or off the premises, or disturbances which interfere with the peaceful enjoyment of property by neighbors of the Housing Authority. * * *"
 {¶ 15} In June 2005, PMHA became aware that Mr. Parham was charged with disorderly conduct in May 2005. On June 9, 2005, PMHA sent correspondence to Ms. Brumley and Mr. Parham, notifying them of their violation of the lease agreement and advised them of PMHA's policy to evict tenants for any criminal activity if it threatens the health, safety or right to peaceful enjoyment of the premises by other tenants, employees of PMHA, or persons residing in the vicinity. The correspondence stated it served as a thirty-day written warning that any future violations could result in a termination of their lease.
 {¶ 16} In response, Ms. Brumley sent correspondence to PMHA on June 10, 2005, which stated:
 {¶ 17} "* * * PMHA employees and the Kent Police Dept. lie, especially on people of color. So try and evict my son on these trump[ed] up charges if you want to. * * *. And me and my children have always been responsible for our property. And this made up criminal activity charge that the Kent Police and PMHA have work[ed] together to try and charge my son with will not hold up in Federal Court [because] that's where we are headed. So I am going to ignore this so-called 30-day notice written warning. Because if anyone is in violation, it's PMHA. So I will be waiting to hear from HUD [on] this lease, false charges that PMHA and the Police Dept. (Kent) have charged my son with and my files that HUD has audited. Because someone is going to jail and prison and it's not Francesca Brumley." *Page 5 
 {¶ 18} In 2007, PMHA became aware of additional criminal activities of Mr. Parham: in addition to the disorderly conduct conviction in May of 2005, he was also charged with disorderly conduct twice in 2006, and with assault in 2006 and 2007.[1] In the 2006 assault case, Case No. 06CRB1406, he was found guilty after trial of assaulting Jennifer Cline, a tenant at the same housing complex. For that offense, he was sentenced on November 14, 2006, to one hundred eighty days in jail, and was prohibited from having any contact with Ms. Cline or being within five hundred feet of her residence. He was also ordered not to pass her residence on his way to work.
 {¶ 19} On May 8, 2007, PMHA sent correspondence to Ms. Brumley and Mr. Parham, requesting their attendance at a meeting to discuss PMHA's plan to terminate their lease due to Mr. Parham's criminal activity. The letter also advised them of the possibility of the removal of Mr. Parham alone from the lease, so as to allow other household members to stay at the premises.
 {¶ 20} On May 16, 2007, Ms. Brumley attended the meeting with a fair housing advocate. PMHA offered Ms. Brumley an opportunity to remove her son from the lease and remain a resident herself. Ms. Brumley rejected that option, adamantly denying her son's engagement in any criminal activity.
 {¶ 21} Consequently, on May 17, 2007, PMHA sent correspondence to Ms. Brumley, notifying their violation of the lease agreement and PMHA's intention to terminate their lease. The correspondence listed the criminal activities in which Mr. *Page 6 
Parham was involved between May 2002 and March 2007. It stated that Mr. Parham's criminal record showed he continued to participate in criminal activity while a public housing tenant, which indicated he was a threat to the health, safety, or right to peaceful enjoyment of the property by other tenant, neighbors, agents or employees of PMHA. PMHA advised them of their right for an informal review as to the accuracy and relevancy of Mr. Parham's criminal record.
 {¶ 22} Neither Ms. Brumley nor Mr. Parham sought a review of Parham's criminal record; consequently, on June 11, 2007, PMHA provided Ms. Brumley and Mr. Parham a thirty-day written notice of its intent to pursue the eviction proceedings against them. The notice advised them of their right for a formal review within five working days. Neither Ms. Brumley nor Mr. Parham filed an appeal from that decision. Thereafter, on July 16, 2007, PMHA sent them a three-day notice to vacate the premises.
 {¶ 23} A trial on PMHA's eviction complaint was then scheduled before a magistrate on September 20, 2007. The magistrate, however, had to continue the trial because Ms. Brumley appeared without counsel and requested a continuance to allow her to obtain counsel.
 {¶ 24} On October 2, 2007, the magistrate conducted a trial in which Ms. Brumley and Mr. Parham appeared pro se.
 {¶ 25} Ms. Blevins, Property Manager at PMHA, testified for the agency and described the actions taken by the agency in this case, including the June 9, 2005 correspondence, the May 8, 2007 correspondence, and the May 16, 2007 meeting. She testified that at the May 16, 2007 meeting, the agency offered Ms. Brumley the *Page 7 
opportunity to remove her son from the lease and remain a resident herself, but Ms. Brumley rejected that option, denying her son was involved in criminal activity.
 {¶ 26} Ms. Cline, the victim of the 2006 assault case, also testified for the agency. She testified that the assault took place at her residence and Mr. Parham tried to intimidate her since the assault. She answered "definitely" when asked if Mr. Parham's presence in the area "interfere[d] with [her] peaceful enjoyment of the property." She also testified that Ms. Brumley told her she "was going to hell" after the previously scheduled trial was adjourned on September 20, 2007.
 {¶ 27} Ms. Cline also testified that her five-year-old daughter was afraid of Mr. Parham, stating:
 {¶ 28} "My daughter does not want to come home at night. Every time we come home she is dreaded of leaving the car by herself. I need to be right by her side, and you know who she mentions every time? Sly. She's afraid that Sly will come by. My daughter wants to move. She mentions it every week on a consistent basis. She was three years old at the time, but she was traumatized and she talks about it and she is five now."
 {¶ 29} Three family members testified for the defense. Brittany Morji, Mr. Parham's sister, testified that his brother never assaulted Ms. Cline and Ms. Cline's daughter was not afraid of him and in fact loved him. Consuelo Thomas, also a sister of Mr. Parham's, testified that Ms. Brumley and Mr. Parham were not a menace or threat to their community and also testified that Ms. Cline's daughter was not scared of Mr. Parham but loved him. Sandra Jones, Mr. Parham's aunt, testified that she lived in *Page 8 
Portage County until May 2006 and answered "no" when asked if she thought at any point Ms. Cline had any fear toward Mr. Parham.
 {¶ 30} Mr. Parham and Ms. Brumley testified on their own behalf. Mr. Parham stated that Ms. Cline lied on the witness stand at the 2006 assault trial, which led to his conviction in that case. Ms. Brumley testified she has been a law-abiding citizen and had lived in her unit for twenty years without ever being involved in any criminal activity. She claimed that PMHA targeted her and her son while allowing others involved in drug activities to move into the community; that the justice system in Portage County was "a very unjust justice system" and "people of color are being convicted of crimes they did not do." She described Ms. Cline as a "disturbed" mother who needed counseling. She claimed her son did not assault Ms. Cline and she was in the process of clearing her son's name. She also stated that "* * * the police and PMHA are working together to create these crimes on their tenants, especially the tenants that they want to be removed. * * * [The charge] is being trumped up and it is a conspiracy against poor people of color. * * *"
 {¶ 31} The trial transcript reflects furthermore the following colloquy after the witnesses had testified:
 {¶ 32} "DEFENDANT SLY PARHAM: * * * You are trying to evict my mother because of the charges [against me], * * * and there's one thing I do know and that's my mother cannot control anything that's going on outside of her household * * *. [S]he has other children and some of her other children are not 24 years old, you know what I mean, so I propose then to keep me off the lease. * * *.
 {¶ 33} "THE COURT: Why haven't you proposed that before this? *Page 9 
 {¶ 34} "DEFENDANT SLY PARHAM: I don't even know why I had to come. I had to listen to everything everybody was saying, but what I'm saying —
 {¶ 35} "THE COURT: Yeah, but this case has been going on for quite a while.
 {¶ 36} "DEFENDANT SLY PARHAM: Yeah, and I haven't even been around any of this. I was in jail, matter of fact, for most of these little hearings and all this, but why isn't —
 {¶ 37} "THE COURT: Well, the case has been going on for closer to two and a half years, I think.
 {¶ 38} "DEFENDANT SLY PARHAM: Now to tell you the truth, when I signed this lease —
 {¶ 39} "THE COURT: I go back to the spring of `05, that, I believe, is two and a half years ago.
 {¶ 40} "DEFENDANT SLY PARHAM: And that was a Disorderly Conduct, and you know, I'm sitting here looking at the charge and believe it or not, not to get into it, but how the whole situation happened I should have never got a charge. You want to talk about trumping something, yeah, you go look at the court records for yourself.
 {¶ 41} "THE COURT: So you're saying that everything that you've been convicted of has been trumped up against you?
 {¶ 42} "DEFENDANT SLY PARHAM: I tell you this, Your Honor —
 {¶ 43} "THE COURT: In all circumstances, in all of your convictions, it's all been trumped up.
 {¶ 44} "DEFENDANT SLY PARHAM: No, I can't say that. *Page 10 
 {¶ 45} "MS. BRUMLEY: We're not saying from `02 to `05 where he got back on the lease. Those charges he may be held accountable for, but from `05 up until `07, then yes, they have been trumped up from the disorderly —
 {¶ 46} "THE COURT: They're all trumped up between `05 and `07?
 {¶ 47} "DEFENDANT SLY PARHAM: No, Your Honor
 {¶ 48} "MS. BRUMLEY: Just the one in `05 that's saying disorderly, the one they're saying that —
 {¶ 49} "THE COURT: The one in May of `05?
 {¶ 50} "MS. BRUMLEY: Yes, sir, and the `06 with Jennifer Cline * * *.
 {¶ 51} "THE COURT: What are you saying, Mr. Parham?
 {¶ 52} "MR. PARHAM: What I'm saying is if there's the solution to the problem, please let her raise her children and there'd be no point for her to be homeless.
 {¶ 53} "THE COURT: That's something that you have to agree with [PMHA]. That's something between the parties. They're the ones bringing this eviction action.
 {¶ 54} "* * *.
 {¶ 55} "THE COURT: We're here because you couldn't agree to things. They're bringing the eviction action because they said to leave and you didn't leave, and you made no offer that you were going to leave, as far as I know. Did you ever make them an offer that you would leave and let your mother stay there?
 {¶ 56} "Mr. PARHAM: No.
 {¶ 57} "THE COURT: Until now. Why did you not do that until now?
 {¶ 58} "MR. PARHAM: Maybe because I wasn't aware of it, man. * * *. *Page 11 
 {¶ 59} "THE COURT: Well, you have been a party to this since this started and this case was filed in August of 2007. * * *.
 {¶ 60} "* * *.
 {¶ 61} "THE COURT [addressing PMHA's counsel]: Okay. Do you want to talk to him about that, Mr. Scavdis?
 {¶ 62} "MR. SCAVDIS, SR.: Your Honor, at this point, we don't feel that that's a viable alternative. We've come this far, we really don't feel it is."
 {¶ 63} Despite counsel's statement that the agency felt it was no longer a viable alternative for Ms. Brumley to remain in the lease, Ms. Brumley represented to the court that she had talked with the PMHA director in the morning of the trial and he stated that PMHA would allow her to remain in her premises if Mr. Parham was removed from the lease.
 {¶ 64} On October 12, 2007, the magistrate issued a decision, granting a writ of restitution against both Ms. Brumley and Mr. Parham. The magistrate found (1) Mr. Parham was convicted of disorderly conduct on two separate occasions and assault, and (2) the victim in the assault conviction was another PMHA tenant. The magistrate stated that "federal law requires lease terms that give local public housing authorities the discretion to terminate the lease of a tenant when a member of the household engages in criminal activity that threatens the health, safety or right to peaceful enjoyment of the public housing premises, whether the tenant knew, or should have known, of the criminal activity." The magistrate concluded that "considering the totality of circumstances present in this case, PMHA properly exercised its discretion, as mandated by federal law, to terminate the tenancy of the defendants." *Page 12 
 {¶ 65} Ms. Brumley and Mr. Parham filed objections to the magistrate's decision. On December 6, 2007, the trial court, through an acting judge, held a hearing as to their objections, at which Ms. Brumley and Mr. Parham appeared without counsel. Ms. Brumley represented to the court that she and her son were "falsely charged and accused," that she had involved the Ohio Civil Rights Commission, the FBI, the US Department of Justice, and HUD in this matter, and that the eviction matter was a result of "retaliation". She stressed she has lived at the premises for twenty years and she and her family would have no place to live if they were evicted.
 {¶ 66} On January 31, 2008, the trial court entered a judgment entry overruling the defendants' objections, adopting the magistrate's decision, and ordering that a writ of restitution be issued against Ms. Brumley and Mr. Parham. The trial court noted that most of the defendants' objections involved personal difficulties Ms. Brumley would encounter if required to vacate, and that the primary argument propounded by the defendants was that Ms. Brumley should not be evicted for the criminal activity of a household member. The trial court also noted Ms. Brumley's assertion that Mr. Parham had agreed to reside elsewhere and therefore she should be allowed to maintain her residence.
 {¶ 67} The trial court stated, however, that the evidence supporting the magistrate's finding that a household member had been convicted of criminal activity was corroborated at its own hearing, and that the magistrate correctly applied the federal law. Therefore, the trial court concurred with the magistrate's conclusion that "considering the totality of the circumstances presented, PMHA properly exercised its discretion to terminate the tenancy of the defendants." *Page 13 
 {¶ 68} The trial court issued a writ of restitution and the instant appeal followed.[2]
 {¶ 69} On appeal, Ms. Brumley and Mr. Parham raise three assignments of error for our review.
 {¶ 70} "[1.] The magistrate and judge did not weigh equitable consideration in issuing the writ of restitution.
 {¶ 71} "[2.] Magistrate O'Neill and Acting Judge Smith did not consider that the criminal convictions had to threaten the `health, safety or right to peaceful enjoyment of the public housing premises.'
 {¶ 72} "[3.] The magistrate and judge erred in holding that any convictions for disorderly conduct was a basis for evicting."
 {¶ 73} Standard of Review
 {¶ 74} Civ. R. 53(D)(4)(d) provides:
 {¶ 75} "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."
 {¶ 76} Furthermore, "[o]n appeal, a trial court's adoption of a magistrate's decision will not be overruled unless the trial court abused its discretion in adopting the decision." Brown v. Gabram, 11th Dist. No. 2004-G-2605, 2005-Ohio-6416, ¶ 11, citing *Page 14 Lovas v. Mullet (July 29, 2001), 11th Dist. No. 2000-G-2289, 2001 Ohio App. LEXIS 2951, *5-6. See, also, Caskey v. Lordstown Dev. Corp. (Jul 14, 2000), 11th Dist. No. 99-T-0034, 2000 Ohio App. LEXIS 3203, citingIn the Matter of Gibbs (Mar. 13, 1998), 11th Dist. No. 97-L-067, 1998 Ohio App. LEXIS 997, *12 (our review of the trial court's decision under Civ. R. 53 is limited to a determination of whether the court abused its discretion in adopting the magistrate's decision).
 {¶ 77} "An abuse of discretion is more than error of judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 78} Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision; the focus is on the trial court's actions and not the actions of the magistrate. W. R. Martin, Inc. v. Zukowski, 11th Dist. No. 2006-L-028 and 2006-L-120, 2006-Ohio-6866, ¶ 32; see, also, Berry v. Firis, 9th Dist. No. 05CA0109-M, 2006-Ohio-4924.
 {¶ 79} Pertinent to the instant appeal is Title 42 U.S.C. § 1437d(l)(6), which provides, in part:
 {¶ 80} "(l) Leases; terms and conditions; maintenance; termination. Each public housing agency shall utilize leases which —
 {¶ 81} "* * *.
 {¶ 82} "(6) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any *Page 15 
member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy."
 {¶ 83} 42 U.S.C. § 1437d(l)(6), which provides for no-fault eviction, was reviewed by the United States Supreme Court in Dep't. of Hous. v.Rucker (2002), 535 U.S. 125, 130. In that case, a housing authority instituted eviction proceedings against several public housing tenants for a violation of a lease provision obligating the tenants to assure that the tenant, any member of the household, a guest, or another person under the tenant's control, would not engage in any drug-related criminal activity on or near the premises. The issue in that case was whether 42 U.S.C. § 1437d(l)(6) requires lease terms authorizing the eviction of so-called "innocent tenants." The court answered the question in the affirmative, holding that:
 {¶ 84} "42 U.S.C. § 1437d(l)(6) unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity."
 {¶ 85} Although Rucker concerned the "drug-related criminal activity" portion of the statute, the holding equally applies to criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants. Thus, PMHA is required to comply with the statute and it does — Section (11) of Article XIV of the PMHA lease largely tracks the language of the statute and provides that: "The lease may be terminated for * * * [criminal activity by Tenant, household member, guest, or other person under Tenant's control, * * * including criminal activity that threatens the health, *Page 16 
safety or right to peaceful enjoyment of the Authority's public housing premises by other Tenants or employees."
 {¶ 86} In accordance with the federal statute and the lease term, PMHA has the discretion to terminate a lease if a tenant or a tenant's household member engages in "criminal activity that threatens the health, safety or right to peaceful enjoyment" of the housing premises. Thus, a tenant can be removed from the lease either because of his or her own criminal activity or because of criminal activity by a household member.
 {¶ 87} In this appeal, the appellants' second and third assignment of error concern the eviction of Mr. Parham due to his own criminal activity, while the first assignment of error concerns the eviction of Ms. Brumley based on the criminal activity of a household member, Mr. Parham. We first address the second and third assignment of errors concerning Mr. Parham. They relate to appellants' claim that the trial court failed to find Mr. Parham's criminal activity actually "threatened the health, safety or right to peaceful enjoyment of the premises" of other tenants.
 {¶ 88} Here, the record shows PMHA documented two disorderly conduct convictions of Mr. Parham (in Case No. K06CRB 843 and Case No. K06CRB 1643). More significantly, he was convicted in 2007 of assaulting a tenant at the same public housing complex (in Case No. 06CRB 1406). The victim, Ms. Cline, testified at the trial before the magistrate that Mr. Parham's presence in the area interfered with her peaceful enjoyment of the premises. She also testified that her five-year-old daughter was "traumatized" by the assault incident and was afraid of Mr. Parham.
 {¶ 89} Although it is unclear from the record whether the two instances of disorderly conduct occurred at the same housing complex, the record establishes that *Page 17 
Mr. Parham assaulted another tenant at her residence, and that both her and her daughter feared him. The magistrate in his decision found specifically that the victim of the assault conviction was another PMHA tenant and recited the federal law that requires lease terms to give local public housing authorities the discretion to terminate a lease when a tenant or a member of the household engages in criminal activity that threatens the health, safety or right to peaceful enjoyment of the public housing premises. In overruling the objections to the magistrate's decision, the trial court stated the evidence of Mr. Parham's convictions of criminal activity which included an assault on another PMHA tenant was corroborated at the hearing the court itself conducted. Because the record establishes Mr. Parham's conviction of assault and contains the victim's testimony that Mr. Parham's presence interfered with her and her daughter's peaceful enjoyment of the premises, we cannot say the trial court abused its discretion affirming the magistrate's finding. The second assignment is without merit.
 {¶ 90} In the third assignment of error, the appellants complain Mr. Parham's convictions of disorderly conduct should not be ground for eviction because there was no evidence that his offenses of disorderly conduct "threatened the health, safety or peaceful enjoyment" of other PMHA tenants.
 {¶ 91} Neither 42 U.S.C. § 1437d(l)(6) nor the PMHA lease requires multiple criminal activities by a tenant or household member for the removal from public housing. In this case the eviction is based on Mr. Parham's conviction of assault, a criminal activity which the evidence shows to have "threatened the health, safety, or right to the peaceful enjoyment of the premises by other tenants." The trial court affirmed the magistrate's decision because evidence found by the magistrate was corroborated at *Page 18 
the hearing independently conducted by the court. Therefore, we discern no abuse of discretion by the trial court. The appellants' third assignment of error is overruled.
 {¶ 92} The appellants' first assignment of error pertains to the eviction of Ms. Brumley due to a household member's criminal activity. The appellants contend neither the magistrate nor the trial court considered equitable concerns in this case. Specifically, they argue the magistrate and the trial court failed to consider the fact that Ms. Brumley had never been involved in any criminal activity and moreover she would not be able to afford other housing if she was evicted from the public housing.
 {¶ 93} We recognize a trial court may consider equitable circumstances in eviction matters. "Courts have the power to consider equitable defenses in deciding whether to award forfeiture." Esho v. Shamoon,Inc. 6th Dist. No. L-06-1189, 2007-Ohio-1529, ¶ 13, citing SouthernHotel Co. v. Miscott, Inc. (1975), 44 Ohio App.2d 217, 221. "Ohio courts have the power, and often exercise it, to relieve a tenant from the consequences of forfeiture of a leasehold interest." Gorsuch Homes, Inc.v. Wooten (1992), 73 Ohio App.3d 426, 435-436, citing Tabor v.Bellman (1919), 13 Ohio App. 382. See, also, Whitmore v. Meenach (1940), 33 Ohio Law Abs. 95; Peppe v. Knoepp (1956), 103 Ohio App. 223. However, we note that "[t]his is a fact specific analysis and `no one equitable maxim provides a complete answer' to every case." Esho at ¶ 13, citingMiscott.
 {¶ 94} Moreover, 24 C.F.R. 966.4(l)(5)(vii)(B) provides:
 {¶ 95} "(B) Consideration of circumstances. In a manner consistent with such policies, procedures and practices, the PHA may consider all circumstances relevant to a particular case such as the seriousness of the offending action, the extent of *Page 19 
participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity and the extent to which the leaseholder has shown personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action."
 {¶ 96} Here, the record reflects PMHA advised Ms. Brumley in the May 8 correspondence the possibility of removing Mr. Parham from the lease so as to allow her to stay at the premises. At the May 16, 2007 meeting, PMHA again offered that opportunity to Ms. Brumley. She, however, rejected the option, denying her son was involved in criminal activity. When PMHA sent a notice on May 17, 2007, of its intention to evict based on its documentation of Mr. Parham's convictions of disorderly conduct and assault, Ms. Brumley and Mr. Parham did not seek a review of the matter. They again failed to avail themselves of a right to appeal from PMHA's decision when sent a thirty day notice for eviction.
 {¶ 97} As reflected in the trial transcript, instead of cooperating with PMHA to help "prevent or mitigate the offending action" engaged in by her son, Ms. Brumley was hostile to PMHA when confronted with documentation of his criminal activity. She claimed the criminal charges against her son were all "trumped up," blamed the victim for his assault conviction, and refused to take responsibility for the conduct of a household member as required by PMHA's policies. When offered an opportunity to remove her son from her lease so as to allow her to stay at the premises, she rejected that option — it was not until the trial of the eviction matter was already underway that she showed a willingness to consider it. The magistrate in its decision stated that considering "the totality of the circumstances present in this case," PMHA properly *Page 20 
exercised its discretion to terminate the tenancy of both Ms. Brumley and Mr. Parham. The trial court's decision likewise stated that "considering the totality of the circumstances presented," PMHA properly exercised its discretion for the termination. Given this record, we conclude the magistrate considered the equitable circumstances present in this case, and the trial court, after its own independent review, did not abuse its discretion in affirming the magistrate's decision. The first assignment of error is also without merit.
 {¶ 98} For the foregoing reasons, we affirm the judgment of the Ravenna Division of the Portage County Municipal Court.
DIANE V. GRENDELL, P.J., CYNTHIA WESTCOTT RICE, J., concur.
[1] The exhibits submitted at trial show that in addition to the 2006 assault case, Mr. Parham was involved in the following cases in Portage County Municipal Court: In Case No. K05CRB919, he pled guilty to an unidentified offense on September 28, 2005, and was sentenced to twenty-four hours of community service; in Case No. K06CRB843, he pled guilty on June 1, 2006 to a charge of disorderly conduct, a minor misdemeanor, and was sentenced to thirty days of community control; in Case No. K06CRB1643, he pled guilty on August 16, 2007 to disorderly conduct and was sentenced to thirty days in jail with twenty-one days suspended; in Case No. K07CRB436, he was charged with assault but the case was dismissed on April 12, 2007, because the victim failed to appear at trial.
[2] This court granted a stay of execution of the trial court's judgment on the condition that appellants deposit the sum of $100 for each month in which the stay remains in effect. *Page 1